### GEORGE HATHAWAY *versus* INHABITANTS OF ADDISON.

Where a person was taxed for personal estate, by the assessors of a town, of which he was not an inhabitant, and was compelled to pay the tax, which he paid under protest, or where it was paid by seizure and sale of his property, and the money paid into the town treasury, he may recover the same, in a suit against the town for money had and received, without proof that the acting officers of the town, who assessed, collected and received the money, were legally elected and qualified.

Nor will his right to recover in such action be affected by the fact, that the person assessed owned real estate, in the town, which was not taxed; for the tax assessed was wholly unauthorized and void, and was not a case of over valuation, where the remedy is by application to the assessors for an abatement.

The identity of a book, as the records of a town, may be established, to make it admissible in evidence, by other witnesses than the officers of the town.

In the absence of any record evidence that the officers of the town were duly sworn, the fact may be proved by parol testimony.

If the record be silent as to the mode in which officers were elected, the presumption will be, without proof to the contrary, that they were chosen in the manner required by law.

EXCEPTIONS to the rulings of MAY, J.

THIS was an action of ASSUMPSIT to recover back $45,80, assessed upon the plaintiff's poll and personal estate, as an inhabitant of Addison, in the year 1855, alleged to have been paid to the defendants' collector under protest; also $36,17, assessed for the year 1856, for which his property was seized and sold by the collector, and for $10, for costs and charges.

The plaintiff had been for sixteen years a resident in Addison, prior to 1854; and there was evidence tending to show, that, in the autumn of that year, the plaintiff removed from that town, although he remained there some portion of the time, attending to some unsettled business; *that* the tax, for the year 1855, was paid by plaintiff to the acting collector of the defendants' under protest; and, that the acting collector for the year 1856, seized and sold personal property of plaintiff's to satisfy the tax for 1856; *that* the collector paid the money to the treasurer of defendants.

The bill of exceptions contains the evidence introduced at

the trial, the facts material to the questions raised by the case are clearly indicated by the opinion of the Court.

The first instruction requested by the defendants' counsel related to the burden of proof, and was given to the jury.

The second and third requested instructions are substantially contained in the *fourth*, which was:—

4. That the plaintiff cannot recover in this action without proof, among other things, that the assessors, treasurer and collector for the years 1855, and 1856, were legally chosen, qualified and sworn; that the taxes were unlawfully assessed; were paid under duress of his person or seizure of his property, or by compulsion and under protest, or collected by the seizure and sale of his property against his consent and in violation of law, and that the money so collected was paid over to the treasurer of the town, or to some other legal officer or agent of the town, authorized to receive it.

5. That the plaintiff cannot recover back from the town the amount of taxes paid by or collected of him in the years 1855 and 1856, if there be *no proof* that he was *compelled* to pay any portion thereof by duress of his person or seizure of his property, or that any part was paid under protest and to avoid such arrest or seizure.

6. That the charge of cost and damage in the account annexed, and the fees and charges of the collector for the seizure and sale of plaintiff's property in 1856, to satisfy the tax assessed upon the plaintiff for that year, cannot be recovered in this action. [This instruction was given.]

7. That, if they should find that the plaintiff owned *real* estate in Addison on the 1st day of April, 1855, and the 1st day of April, 1856, for which he might be lawfully assessed in Addison, although he was not an inhabitant of Addison at the times of said assessments, then, and in that case, the assessment of the plaintiff for *personal* property in those years for which, if not an inhabitant, he was not liable to be assessed, would, be a case, of *over* taxation and not one of *illegal taxation,* for which this action could be maintained.

8. That, if they shall find that the plaintiff was not an

inhabitant of Addison on the 1st day of April, 1855, and on the 1st day of April, 1856, and, therefore, was unlawfully and illegally assessed in Addison for his personal estate for those years, the assessors not being "*by law required to assess*" any person not an inhabitant of their town for his personal estate, the town is not responsible for the assessments so made, and that this action cannot be maintained.

The Court gave the jury the 1st and 6th of the requested instructions; and declined to give them either of the others; but instructed them, that if they should find that the plaintiff was not an inhabitant or resident of Addison, on the 1st day of April, 1855, and on the 1st day of April, 1856, and was assessed in said town in those years by the rightly acting assessors of said town, and said taxes were collected by a person acting as collector, directed by commitments and warrants from said assessors, to collect the same, and by him paid to the person acting as treasurer of said town in those years; and the same was paid out upon the orders of the selectmen of said town for town purposes, then the plaintiff will be entitled to recover back the same; provided, that he paid the same because he had a reasonable apprehension, at the time of such payment, that his body would be arrested and committed to prison, if he did not pay; or if he suffered his property to be taken for the payment thereof, by reason of any threats of the collector that he should be so arrested and imprisoned, and paid the same to avoid such arrest and imprisonment; or if the money was paid under protest and denial of his liability therefor, at the time of such payment, and for the purpose of avoiding an arrest or seizure of his property; if paid under any such circumstances, the payment would not be voluntary.

The verdict was for the plaintiff; and the jury found specially that the plaintiff was not an inhabitant of Addison on the first day of April of either of the years 1855 or 1856.

The several questions raised by the exceptions were elaborately argued by

*J. A. Lowell,* for the defendants, and by

· *Bradbury,* for the plaintiff.

The opinion of the Court was drawn up by

MAY, J. — The taxes sought to be recovered back, as having been illegally assessed and paid by compulsion, were assessed by the acting assessors of the defendant town, in the years 1855 and 1856. The writ contains three counts, one of which is for money had and received. The tax for each year was assessed upon personal estate only; and it was not at the trial, nor is it now contended that any portion of such estate was liable to taxation in the town of Addison, unless the plaintiff was an inhabitant on the first day of April in those years for which the assessments were made. Such habitancy the jury have distinctly negatived.

It appears that exception was taken, at the trial, to the admission of the town records, because the book purporting to be such, offered by the plaintiff, was not identified by the town clerk. Its identity, as the record book of the town, was shown by another witness. We know of no rule of law which requires the identification of such a record by any officer of the town. It is sufficient if it be proved by any competent witness who knows the fact.

Parol evidence was also admitted, against the objection of the defendant, to prove that the assessors and collector for 1855 were duly sworn. Such testimony, in the absence of any record evidence, was clearly admissible. *Cathill & als.* v. *Myrick,* 12 Maine, 222; *Kellar* v. *Savage & als.,* 17 Maine, 444.

It was also objected that the record of 1855 was deficient in not stating that the assessors and other town officers were chosen by ballot. It simply stated that they were chosen. The presiding Judge ruled that such a record was sufficient to show a legal election. Such ruling is in accordance with the law of this State. In the case of *Mussey* v. *White & al.,* 3 Maine, 290, it was held that a record, silent as to the mode of choice, when unimpeached, authorizes the presumption that the mode adopted was the legal mode; and we have no doubt

that a record, stating that certain persons were chosen, imports a legal choice.

Again, it is contended that the record of the annual March meeting for 1856, from which it appears that the selectmen and assessors, and other town officers, were chosen and sworn, shows that the meeting was illegal, because it was not held at the place named in the warrant. It was notified to be holden " at the school-house in District No. 8, in said town," and the record shows that, at the time and place appointed, the meeting was called .to order, and a moderator was chosen and sworn by the clerk. The record then states, that the meeting was then adjourned to Col. James Curtis' Hall, and the residue of the business appears to have been transacted there. The record does not state, in words, that any vote to adjourn was taken, or show any particular reason for such adjournment. The language of the record sufficiently shows that the adjournment was the act of the meeting, and fully authorizes the presumption that it was done by vote.

The right of the inhabitants of a town, who are authorized to vote in town affairs, to adjourn meetings, when called for that purpose, from time to time and place to place, as they may think proper, cannot for a moment be doubted. Immemorial usage has sanctioned such right, and it may properly be exercised unless prohibited by some statute. None such has been cited, or is known to exist. Nor is it necessary that the record should state any reason for the adjournment. The voters assembled are the sole judges of that.

Again, it is urged that the general instructions which were given to the jury were manifestly erroneous. They were based upon the idea that where a person not liable to be taxed, and over whom the assessors have no jurisdiction, has been unlawfully assessed by persons assuming to act as the assessors of a town, and such tax has been collected, against the will and protest of the person taxed; or paid by him for the purpose of avoiding the arrest of his body or the seizure of his property, and paid over by the acting collector, to the acting treasurer of the town, and by him paid out, upon the

orders of the selectmen, for town purposes, the money so received and used may be recovered back in an action for money had and received, notwithstanding the acting agents of the town who participated in the assessment and collection of the tax, and the treasurer who received it, may not have been severally qualified as the statute requires.

The action for money had and received is an equitable action, and in such action the plaintiff may recover any monies in the hands of the defendants, which they cannot conscientiously retain. It does not follow, because the assessors, the collector, or the treasurer of the defendant town may have been unauthorized or acted illegally for want of proper qualification, that the town who have received the fruits of their illegal action may not be held liable. Nothing is better settled than that a person or corporation having money in their possession which they are not entitled to retain, or which has been received by persons professing or assuming to act as their agents, without authority, and been paid over to such person or corporation, or which has gone to their benefit by the direction or assent of their authorized agents, may be recovered back in an action like this. Even in cases where the agents or wrongdoers are personally liable, there is, at the common law, a cumulative remedy against the party who has had the money or the benefit of it. The law, as now settled, implies a promise to repay the money so held or used, whether the party who has it or has had the benefit of it be an individual or corporation. *Joyner* v. *The third School District in Egremont*, 3 Cush., 567; *Briggs* v. *Inhabitants of Lewiston*, 29 Maine, 472.

Until the statute of 1826, c. 337, § 1, providing that assessors of towns and certain other corporations should not be made responsible for the assessment of any tax which they were required by law to assess, and the liability, if any, should rest solely with such corporation, the assessors being responsible only for their own personal faithfulness and integrity, any person unlawfully assessed had an election of remedies. He might proceed by an action of trespass against the asses-

sors, and recover all the damages occasioned by their wrongful acts; or he might waive the tort and bring assumpsit against the corporation, and recover the amount of money which had gone into its possession or to its benefit under the direction of its lawful agents. The leading purpose of the statute was not to give a new remedy as against corporations, but was to relieve faithful town officers from liability, and to provide that the remedy then resting upon corporations should be the only one to which the party injured should be entitled in all cases to which the statute applies. In cases where it did not apply, the remedies were left as they existed before. If, however, the statute enlarges the remedy, so as to make the corporation liable where it was not before, it did not take away the cumulative remedy, which, by the common law, was then resting upon the corporations to which it relates. In the case before us, the jury must have found that the taxes were illegal, and that the money which was obtained from the plaintiff was paid out by the acting treasurer of the town, upon orders drawn by the selectmen, and that it was used for the purposes of the town. The authority of the selectmen does not appear to have been questioned at the trial.

The jury must also have found, under the instructions given, that the taxes were paid by the plaintiff, either because he had a reasonable apprehension at the time of such payment that his body would be arrested and committed to prison, if he did not pay; or, that he suffered his property to be taken for the payment thereof, by reason of some threats of the collector that he should be so arrested and imprisoned, and paid the same to avoid such arrest and imprisonment; or, that the money was paid under protest and denial of his liability at the time of payment, for the purpose of avoiding an arrest, or the seizure of his property. The evidence upon which the jury so found is not fully reported, but this is not material, as there is no motion in the case to set aside the verdict as against the weight of evidence. The jury were instructed that a payment under any of these circumstances would not be voluntary. That such instruction was correct,

we think, the cases decided in this State and Massachusetts will show.

The case of *Smith* v. *Inhabitants of Readfield*, 27 Maine, 145, is a case where both the law and the fact were referred to the Court. In considering the question whether the payment of the plaintiff's taxes was voluntary, the Court say, " there is no proof that he was compelled to pay any portion of them by duress of his person or property, or *that any part was paid under protest and to avoid an arrest of his person or a seizure of his property.*" This language clearly implies, that if the payment had been made under protest, and for the purpose of avoiding an arrest, or seizure of his property, it would not have been voluntary. The Court further say, that " the mere fact that the taxes were paid to collectors, who had warrants for their collection, affords no satisfactory proof of a payment by duress; and that, " to constitute such payment, there should be proof of an arrest of the body or of a seizure of the property; or proof authorizing the conclusion that such an arrest or seizure could be avoided only by payment." Unless there were circumstances and facts proved, showing that such arrest or seizure would be made if the taxes were not paid, the plaintiff could not be presumed to have paid the money by compulsion, or for the purpose of avoiding such arrest or seizure. The question is one of motive. Was the money paid voluntarily, or was it paid under the force of constraining circumstances? It could not have been a voluntary payment, if the purpose for which it was paid was to avoid an arrest of the body or a seizure of property. The question before us, is not how other persons than the plaintiff would have been affected, by the circumstances in which he was placed, but what effect must have been produced by the existing circumstances upon his mind to render the payment involuntary. Whether such effect was produced was for the jury. It could not have been a voluntary payment if made under any of the circumstances which the jury have found. No such fact was found in the case of *Smith* v. *Readfield*, just cited, but it must have been

found in the case before us, to use the precise language of the Court, in that case, as before quoted, that a payment was made by the plaintiff "under protest and to avoid an arrest of his person or a seizure of his property."

In the case of *Preston* v. *Boston*, 12 Pick., 7, it is said, in the opinion by SHAW, C. J., that, where a party not liable to taxation is called on peremptorily to pay upon such a warrant, and he can save himself and property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and by showing that he is not liable, recover it back as money had and received.

In the case of *Wright* v. *Boston*, 9 Cush., 233, the same learned Judge, in view of the authorities, says, that the only ground upon which a party is allowed to pay a tax and afterwards maintain an action to recover it back, is when the tax is wholly void, a mere nullity; when a party can have no action, or take no appeal, and when the collector appears with his warrant, he must pay or have his person arrested or property taken, then he pays under a species of duress; and as the tax was wholly void, as when the party was not an inhabitant and not liable to pay any tax, the city or town cannot equitably retain it.

As it appears, in the present case, that the plaintiff was not an inhabitant of the defendant town, and that the assessments were wholly illegal, and the money, so much of it as was not obtained by a seizure and sale of his property, was paid under protest, and for the purpose of avoiding the arrest of his person or a seizure of his property, we think there can be no doubt that such payment was involuntary, and falls within the principle of the preceding cases; nor do we perceive, in view of the facts which the jury must have found, under the instructions given them, any legal reason why the verdict should not stand. The instructions are sustained.

The only remaining question is, whether any of the requested instructions which were refused ought to have been given. The first and sixth were given. The second and third are substantially alike, and so far as they are incon-

sistent with the instructions given, they ought to have been withheld. In some particulars, if the views which we have taken are correct, they are manifestly erroneous. The same is true of the fourth request. The fifth was substantially given in the general instructions, but not in the precise words of the request. The presiding Judge may of right select his own language, provided it convey to the jury the legal principle which is sought, and is in harmony with the law. That he does so affords no legal ground of complaint.

The seventh requested instruction is based upon the fact that the plaintiff owned real estate in the defendant town, in the years 1855 and 1856, for which he was liable to be taxed. It is admitted that the assessments in controversy were only upon personal estate, and the plaintiff, as the jury have found, was a non-resident.

In the case of *Preston* v. *Boston*, before cited, it is said by SHAW, C. J., that " the real estate of a non-resident owner is to be regarded as a distinct subject of taxation from the poll, income and personal estate of the domiciled resident, to be by law distinctly assessed, and in regard to which persons aggrieved have separate and distinct remedies." In this case, the plaintiff owned real estate in Boston, for which he was taxed, with personal estate for which he was not liable to be taxed in that city, by reason of his residence being in the town of Medford, and the Court held that it was a case of illegal taxation and not of over valuation, and that his remedy was the same as that of any other non-resident, who should be erroneously taxed, as not being liable at all, and his action at law was maintained. We are not aware of any difference between the statutes of Maine and Massachusetts which calls for a different rule.

The case before us is a much stronger case for the plaintiff. Not being taxed for his real estate, the entire tax for each year was illegal and void. It is not a case like that of *Preston* v. *Boston*, of an erroneous entry upon the plaintiff's valuation of some property not liable to be taxed, with other estate which was liable. It differs, also, from the case of

*Stickney* v. *Bangor*, 30 Maine, 404, where the plaintiff was an inhabitant and liable to be taxed, and the error consisted in taxing him with personal estate which he did not own, in the same list with other personal estate which he did own. Some portion of the plaintiff's tax was therefore legal, and, for that reason, it was a case of over valuation, and the plaintiff's remedy was an application to the assessors for an abatement.

In the present case, the entire assessments are mere nullities, and it is not perceived how the plaintiff's ownership of real estate, for which he might legally have been taxed as a non-resident, can justify the assessors of the defendant town in taxing him for personal estate not liable to taxation in that town. The assessments being entirely void, the plaintiff was under no necessity of applying to the assessors to abate his tax. It is not a case of over valuation, but of entire illegal assessments. *Howe* v. *Boston*, 7 Cush., 273; *Herriman* v. *Stowers & als.*, 43 Maine, 497.

The eighth requested instruction was properly withheld. Its fallacy consists in supposing that the defendants could be held liable only by reason of the statute passed in 1826, before cited, and reënacted in the R. S. of 1841, c. 14, § 56, and in the revision of 1857, c. 6, § 29. If the assessors were not required by law to assess the taxes complained of, and were, notwithstanding the statute, still held liable for their acts, as this Court have settled in *Herriman* v. *Stowers & als.*, just cited, then, as we have already seen, the statute not applying, the plaintiff was left to the remedies which the common law affords. The request entirely overlooks the fact that the defendants had received the plaintiff's money wrongfully, and that it had been used for their benefit by direction of their lawful agents, their own selectmen.

*Exceptions overruled — and*
*Judgment on the verdict.*

TENNEY, C. J., RICE, APPLETON and KENT JJ., concurred.

---

NOTE BY CUTTING, J. — It appears that the plaintiff, at the time of the assessment, was not a resident of the defendant town, and, consequently, the

assessors had no jurisdiction, and the tax was unauthorized, and, having been paid under protest, the plaintiff is entitled to recover. To such a conclusion the opinion finally comes, and, in that conclusion, I concur. The other points raised and settled in the opinion, were all favorable to the defendants, and, consequently, become wholly immaterial to the decision. I do not concur in all of the conclusions, which are only *dicta* and unnecessary to the result.