L. W. HEINTZELMAN *vs.* DRUIDS' RELIEF ASSOCIATION OF THE STATE
OF MINNESOTA.

January 30, 1888.

**Evidence—Minutes of Meeting of Corporation.**—An entry in the minutes of a meeting of a corporation, or its board of directors, that a certain proposition was adopted, is *prima facie* evidence that it received the number of votes necessary to legally adopt it.

**Corporation—By-Laws—Power of Directors.**—Articles and by-laws of the defendant considered, and *held* that, so far as disclosed by them, its board of directors had authority to amend its by-laws.

The plaintiff was the father of Harry C. Heintzelman, who died on October 19, 1884, and who had been a member of the defendant, a beneficiary association organized for the purpose of assisting the relatives of deceased members. The plaintiff, alleging that his son was at the time of his death a member of defendant in good standing, brought this action in the district court for Ramsey county, to recover the amount which the by-laws of the defendant provided should be paid upon the death of a member. The answer put in issue the question whether deceased was a member of defendant at the time of his death. Upon the trial, before *Wilkin*, J., without a jury, it was admitted that deceased had been a member of defendant from some time in 1882 until his death, unless his membership had been terminated by the following facts, viz.: When deceased became a member of defendant, section one of article 15 of the by-laws provided that "when official notice has been received of the death of a member of this association, it shall be the duty of the secretary to notify the members of the same and of their assessments, *   *   * and, in case a member shall fail to pay his assessments within 20 days, he shall be again notified by the secretary; and if said sum shall not be paid within 10 days after second notice, his name shall be erased from the roll of members, and he shall forfeit all claim upon the association." And article 17 of the by-laws provided that "any member of this association may offer amendments to these by-

laws at the annual meeting of this association, and it shall require a two-thirds vote to adopt such amendments." The minutes of defendant, which were offered in evidence by defendant, and which were headed, "First Annual meeting June 20, 1883," contained the following entry: "The following amendments to the by-laws were adopted. * * * Article XV, section 1, is amended as follows: On page 19, on the ninth line, strike out ' 20 days he shall again be notified by the secretary; and if said sum shall not be paid within 10 days after second notice' and insert '30 days' after the word ' within' on ninth line." Two members having died in 1884, the defendant's secretary mailed a notice to deceased at his place of residence, on September 5, 1884, notifying him that he was required to pay, within 30 days, assessments because of such deaths. No other notice was given to the deceased to pay such assessments, and he never paid them. On October 14, 1884, at a meeting of the defendant, the secretary reported the deceased and other members delinquent, and they were suspended for non-payment of assessments. The court held that the evidence did not show that the amendment to article 15, section 1, of the by-laws had been adopted by a two-thirds vote, and directed judgment for the plaintiff. Defendant appeals from an order refusing a new trial.

*Davis, Kellogg & Severance,* for appellant.

*F. V. Brown* and *H. J. Peck,* for respondent.

GILFILLAN, C. J. A by-law of this defendant association provides that "any member of this association may offer amendments to these by-laws at the annual meeting of this association, and it shall require a two-thirds vote to adopt such amendments." The minutes of what appears to have been an annual meeting of the association, held June. 20, 1883, state, among other proceedings, "the following amendments to the by-laws were adopted: * * * Article XV, section 1, is amended as follows," stating the amendment. The minutes do not expressly show by whom the amendments were proposed, nor by what vote they were adopted, and there was no other evidence than the minutes as to those facts. The case turns on the validity of the amendment to said section 1. If the minutes sufficiently show that it was legally adopted, and the body adopting had power so to do, then

defendant, on the evidence given below, is entitled to judgment; otherwise, plaintiff should recover. The minutes state that the amendments were "adopted." This could not be unless they received the two-thirds vote required by the by-law above set forth. When, therefore, the books of a corporation, or of its board of directors, in the minutes of a meeting state that a certain proposition was passed, are the minutes *prima facie* evidence that it passed regularly, having the requisite vote, a majority or two-thirds, as may be necessary? It is only a question of evidence—of the burden of proof. The consequences of the action so appearing to have been taken have nothing to do with the question. If the minutes are not *prima facie* in one instance, they are not in any other.

Every reasonable intendment is to be made in favor of the proceedings of a private corporation in their corporate acts. *McDaniels* v. *Flower Brook Mfg. Co.*, 22 Vt. 274. In the case of a record kept by a school-district clerk, stating "pursuant to notice previously given in writing, agreeable to the provisions of statute, the legal voters of school-district No. 10 met," etc., the record was held *prima facie* evidence of a regular notice. *Sanborn* v. *School-Dist.*, 12 Minn. 1, (17.) A town clerk's record of a town meeting, stating that it was "legally warned," is *prima facie* evidence that legal notice was given. *Isbell* v. *New York & N. H. R. Co.*, 25 Conn. 556. So, if the record of a corporation show a special meeting, duly called and proper notice given, and that business was transacted, it will be presumed that a quorum was present. *Citizens' Mut. Ins. Co.* v. *Sortwell*, 8 Allen, 217; *Baile* v. *Calvert College Educational Soc.*, 47 Md. 117. Where the record showed a quorum present at a meeting, it is presumed that all were notified. *Lane* v. *Brainerd*, 30 Conn. 565; *Chouteau Ins. Co.* v. *Holmes*, 68 Mo. 601; *Sargent* v. *Webster*, 13 Met. 497; the court in the last case saying: "The presumption *omnia rite acta* covers a multitude of defects in such cases, and throws the burden on those who would deny the regularity of a meeting for want of due notice to establish it by proof." If the record book of a town be silent as to the mode in which certain officers were elected, the presumption will be, without proof to the contrary, that they were chosen in the manner required by law. *Hathaway* v. *Inhabitants of Addison*,

48 Me. 440. The presumption in favor of the regularity of proceedings of meetings of corporations and boards of directors is almost a matter of necessity. The minutes of such meetings are seldom kept with nice accuracy of detail as to the manner of doing what is done. Results reached are usually about all that is stated. The number of votes for and against any proposition is seldom stated, and if the entry that such or such a resolution or proposition was passed or adopted is not sufficient without stating the number of votes upon it, such records as usually kept are of very little value as evidence. Presumptively, the result of any vote at such a meeting is duly ascertained and declared at the time by the proper officer, and, as declared, is entered in the minutes. So far as concerns the vote by which the amendment was adopted, the record is *prima facie* evidence that it was regular.

It is contended by the respondent that the amendment was adopted by the board of directors only, and that the power to pass and amend by-laws is not vested in that board, but is reserved to the association at large. The minutes appear to be those of an annual meeting of the association. From the articles of association and the by-laws, which, in many respects, are wanting in precision, we conclude that for the purpose of holding meetings and transacting all business the board of directors represent the association, and that no meetings of the whole body of associates are contemplated, but that the meetings of the board of directors are meetings of the association. The purpose of the association, as stated in the articles, is to provide relief to relatives of deceased members. Its members are druids in good standing, and contributing members of some grove (of the United Ancient Order of Druids) under the jurisdiction of the Grand Grove of the State of Minnesota, "and who have agreed to comply in all respects with the by-laws, rules, and regulations of said association, and who shall have received a majority vote of its board of directors at any meeting." The management of its business is intrusted to the hands of a board of directors, "to consist of one member of the association elected by each grove under the jurisdiction of the grand grove." The officers of the board consist of a president and secretary,—the noble grand arch of the grand grove being the president,

and the grand secretary of the grand grove the secretary,—a treasurer, and medical director, the latter two elected by the board of directors at the annual meeting, the time and place for which are stated in the articles. The articles do not provide for any meeting of the whole body of associates, nor for any business to be done by them, (except through the board of directors.) They do not even elect any officer. The by-laws have the same provision as to officers, except that they provide for a vice-president, who is also elected by the board of directors, and in the by-laws they are called officers of the association, instead of, as in the articles, officers of the board of directors. Regular meetings of the *board* are appointed. Special meetings of the *association* may be called by the president on the request of three directors, the directors shall be notified by mail, and a notice *may* be published in some daily paper at least three days before the meeting. No provision is made that notice *shall* be given to any but directors. The articles were executed by fifteen persons, who, until the first annual meeting thereafter, were designated the board of directors. It does not appear expressly when or by whom the first by-laws were adopted, but there is enough to justify the conclusion that they were adopted by the first board of directors at or about the time of executing the articles. No usage of the association in respect to meetings of the body of associates appears. So far, therefore, as the record before us discloses, the board of directors was the proper body to amend the by-laws.

Order reversed.