JACOBINA DORNES *v.* SUPREME LODGE KNIGHTS OF PYTHIAS.

1. CORPORATIONS. *By-laws. Constitution.*

A constitution adopted by a corporation has not the restrictive force of its charter, and is, in effect, a mere by-law, that may be repealed or modified by a resolution subsequently adopted by the corporation.

2. SAME. *Benefit society. Ratification.*

While the board of control of the Knights of Pythias was without authority to adopt an amendment providing for an anti-suicide clause in the insurance contracts of its endowment rank, which are subject to all laws in force for the government of the rank after as well as at their date, the subsequent ratification of its action in so doing by the supreme lodge, to which the power to legislate is confined by the charter, validates all such contracts where the death of the insured member occurred after the adoption of the resolution of the supreme lodge effecting such ratification, the force of which is unaffected by previous by-laws contained in a compilation denominated the "Constitution of the Supreme Lodge."

FROM the circuit court of the first district of Hinds county. HON. ROBERT POWELL, Judge.

This was an action for $2,000, brought by the appellant on a benefit certificate for that sum, issued to her son, Philip Schanzenbacker, in April, 1894, by the board of control, Knights of Pythias, on the surrender of one for $1,000, issued to him in February, 1894. The certificate was, by its terms, subject to the conditions expressed in the member's application, and the application contained a condition of forfeiture in the event of his suicide. The certificate also recited, as part of the consideration thereof, the compliance by Schanzenbacker with all the laws then or thereafter in force governing the endow-

ment rank, and provided that a violation of the same should render the certificate void.   The anti-suicide law, that gave rise to the condition, was adopted by the board of control on January 12–13, 1893, and this action was reported to the supreme lodge at its next session, and concurred in and approved on September 7, 1894, the supreme lodge adopting the report of the committee on endowment rank, showing its concurrence and approval, designated "Document 159." The power to legislate for the government of the endowment rank is limited to the supreme lodge by its charter.

Schanzenbacker ceased to live on October 27, 1896. The defendant, the supreme lodge, pleaded the fact of suicide, in connection with the conditions against it expressed in the application, the enactment of the suicide amendment by the board of control, and its ratification by the supreme lodge, together with the recital in the certificate sued on that it was based on the declarations, representations and agreements made in the application, and the condition in the certificate that the same should be void in case of any violation of the requirements of the laws then or thereafter in force governing the endowment rank. The plaintiff demurred to defendant's several pleas, and, her demurrer having been overruled, she declined to reply, and appealed from the judgment in favor of defendant. It was agreed between counsel that the various documents referred to in the opinion of the court and briefs should be considered on the hearing of the demurrer in the lower court, and treated as part of the record in the supreme court.

*Calhoon & Green*, for appellant.

It was decided in *Supreme Lodge* v. *Stein*, *ante*, p. 107, that "no anti-suicide provision was in the constitution adopted by the supreme lodge, even up to Stein's death, in August, 1893," and that the suicide clause was the unauthorized act of the board of control, and, though inserted in the application, it did not form a part of the contract, unless it was adopted by the supreme

30—c.

lodge.    There was no claim made in the court below that there had been any change in the charter power of the board of control.    The sole reliance to show an adoption by the supreme lodge of these clauses against suicide and change of occupation, was that contained in the minutes of the supreme lodge of September 7, 1894, adopting the report of the committee to whom was referred the report of the board of control.    These minutes show that the board of control reported to the supreme lodge that it had adopted, January 12 and 13, 1893, the amendment as to suicide.    This report of the board of control was presented August 28, 1894, and, on motion of the supreme keeper of records and seals, it was referred to the committee on endowment rank.    Min., p. 6738.    That committee, by its report presented September 6, 1894, designated "Document 159," reported to the supreme lodge that they fully concurred in and approved of the legislation in all details enacted by said board for the government of the endowment rank.    On September 7, 1894, as recited in said minutes, page 6904, report of committee on endowment rank was taken from the table and "adopted by the supreme lodge, as under document 159," etc.    It was insisted by counsel for appellee that this adoption of document 159, this committee's report, was such an enactment, under the charter and constitution, as made these acts of the board of control the acts of the supreme lodge, and hence, they then became engrafted in each contract of insurance theretofore made.

In considering these matters, it must be borne in mind that we are dealing with conditions subsequent, whereby, as claimed, one party to the contract had the power, by his acts, to change the terms, and impose more onerous stipulations, and, hence, they must be strictly construed.    *Gadberry* v. *Sheppard*, 27 Miss., 203.    Where there is a reserved power in one of the parties to the contract to create new conditions, the rule of strict construction, *a fortiori*, should prevail.    The policy provides that it is " in consideration of the payment, etc., and full com-

pliance with all the conditions therein contained and with the laws governing this rank, now in force or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World,'' etc.   What would constitute ''the laws  .  .  .  hereafter to be enacted'' by the supreme lodge?   Would the adoption of a report of a committee (document 159) by the supreme lodge be the enactment of a law, so as to bind the policy holder by new conditions?   The action of the board of control in passing these stipulations was inoperative, and if the supreme lodge had intended these as law, it would have done so in such proper form as would have notified its policy holders of the change in the contract.

The constitution promulgated as that of the endowment rank at the meeting of 1894 is substantially the same as that of 1892, and this without reference to these stipulations of the board of control.   The first time these ''laws'' of the board of control were adopted by the supreme lodge, as far as appears from the promulgated constitution and laws, was on September 1, 1896 (see const. 1896, p. 12), and then they did not become operative until October 31, 1896 (see certificate to const. 1896, p. 3). Even then the provision of forfeiture for suicide adopted by the board of control was not adopted by the supreme lodge, but only a reduction in the amount of the policy was to be incurred in case of suicide.   Const. 1896, p. 41.   That this adoption of the report of September 7, 1894, was not the enactment of a law within the meaning of the policy, is shown by the fact that at the September meeting, 1894, a new supreme constitution was ordained and put in force on and after September 1, 1894 (Minutes, 6955), seven days before the report was adopted.   By this constitution all legislative power was vested in the supreme lodge (art. 7); and the power reserved to supreme lodge (art. 7, sec. 10, par. 2) was that of enacting laws (par. 17)—to prescribe ''by law the rights, benefits, privileges and duties pertaining to all rank and honors of the order.''

Section 12 provides: "All laws enacted by the supreme lodge shall be of general application, shall be formulated as statutes, and shall be styled 'supreme statutes,' and when introduced, and while under consideration, shall be styled 'propositions.'"

Section 18: "The enacting clause of every proposition shall be as follows: 'Be it enacted by the Supreme Lodge Knights of Pythias,' etc."

It is clear that under the stringent constitution rules for the enactment of supreme statutes, in force on September 1, 1894, the adoption of the report of a committee, or document 159, could not be interpreted as the passage of a statute law.

Article 12, section 2, of supreme constitution 1894, provides that the insurance branch of the order shall be governed by such laws as the supreme lodge may enact or authorize. Counsel laid stress on "or authorize," as sustaining the view that the adoption of the report was sufficient. But the words "or authorize" are themselves violative of the charter (Min., 6830) of 1894; for the charter incorporated Supreme Lodge Knights of Pythias, and by section four it is provided that said corporation "shall have a constitution, and shall have power to amend the same at pleasure." Under Stein's case the supreme lodge, under this charter, could not delegate the power to enact laws, and hence, "or authorize" would be unconstitutional.

Again, counsel insisted that section 6, article 15, supreme constitution 1894 (Min. Bk., 6968) ratified and approved these laws of board of control. That section provides: "The laws hereafter enacted for the government of the endowment rank, and in force at the date of the adoption of, and so far as they do not conflict with, this constitution, shall continue in force as the laws for the government of the insurance branch until superseded by statute duly enacted."

"The laws hereafter enacted" could not mean the unauthorized stipulations of the board of control, but the laws of supreme lodge set forth in the constitution of the endowment rank. It was the supreme lodge speaking, and, of course, it

spoke of its own laws, and not those void acts of the board of control.  Again, it is not pretended that the supreme lodge ever, in any way, acted on the acts of the board of control, except by the adoption of the report of September 7, 1894.  Now, this constitution was in force on September 1, 1894, and hence, "laws hereafter enacted" could not refer to this adoption of the report of September 7, 1894.

Again, the constitution of endowment rank, 1896, shows that these laws of the board of control were for the first time adopted September 1, 1896, and then, under section 19, article 7, supreme constitution (Min. Book, 6961), they went into effect sixty days after passage, and for this reason the certificate to constitution 1896 recites that they went into effect October 31, 1896.  Hence, we insist that the supreme lodge never, in fact, enacted these "Laws of Board of Control" until September 1, 1896, effective October 31, 1896, and hence, therefore, they are inapplicable here, because Schanzenbacker died October 27, 1896, four days before they became operative.  "If the charter, a fundamental agreement of the members, prescribes the mode in which by-laws shall be made and adopted, in order to insure their validity, that mode must be strictly pursued."  1 Bacon Ben. Soc., sec. 80.  Here, the supreme constitution, adopted September 1, 1894, specifically provided how laws should be enacted, and the enactment of a law by the adoption of a committee's report would be a wide departure from the mode prescribed.

The certificate for $1,000 was issued prior to March 10, 1894, and the $2,000 certificate was issued in April, 1894, and it is not pretended that the anti-suicide and change of occupation provisions were ever in any way adopted until September 7, 1894, and more than six months after the contracts were made. The court, in Stein's case, quote with approval the rule that even though the certificate stipulated that assured would be bound by all rules and regulations then existing or thereafter adopted by the union, that assured was not bound by a regula-

tion subsequently adopted by the union materially changing the terms of the policy.    Citing 1 Bacon Ben. Soc., sec. 92; *Wist* v. *Lodge*, 22 Ore., 271.    See, also, 1 Bacon Ben. Soc., secs. 91*a*, 187.

· The charter does not create the power to declare forfeitures, and it is plain that the supreme lodge did not intend to exercise any such power, for in none of the constitutions of endowment rank is there any power of forfeiture asserted until the adoption of the laws of the board of control effective October 31, 1896.

It is held in *Long* v. *Railroad Co.* that there can be no power to enforce forfeitures unless granted by clear legislative enactments.    No such power is consistent with ancient right, and it cannot be obtained from anything but the sovereignty. 1 Bacon Ben. Soc., sec. 88, citing 17 Wend., 17; *Westcott* v. *Minn. M. Co.*, 23 Mich., 45.

Is the adoption of document 159, this committee's report, "a law governing this rank, now in force or that may hereafter be enacted," within the meaning of the policy?    Certain it is that it was not a law governing the rank now in force. Stein case, *supra*.    Could the adoption of this committee's report be "a law governing this rank, . . .   hereafter . . . enacted?"    While members of orders must take notice of by-laws, still it would, as stated, be only such by-laws as were passed in the mode pointed out by the constitution of the order of which they are charged by law with notice.    By-laws are construed liberally in favor of the members and strictly against the corporation, to avoid forfeitures.    3 Am. & Eng. Enc. L. (2d ed.), 1067.    All doubts in application or interpretation of by-laws are to be solved in favor of the preservation of the contract of the member.    *Hobbs* v. *Iowa Ben. Asso.*, 82 Iowa, 111.

*Mc Willie & Thompson*, for the appellee.

The effort to bring this case within the decision in *Supreme Lodge* v. *Stein, ante*, p. 107, must fail, since the facts it dis-

closes are entirely different from those upon which that decision was based.    This wide divergence in the fundamental facts of the two cases is easily shown.

1. In the Stein case, there had been no adoption or ratification of the suicide amendment by the supreme lodge prior to Stein's death, while in this case the ratification occurred more than two years prior to the death of Schanzenbacker.

2. Stein was a member of the endowment rank before the adoption of the suicide amendment on January 12–13, 1893, and made the application for an increase of insurance, containing the stipulation against suicide, on January 20, 1893, only seven or eight days after its adoption.    In the case at bar, Schanzenbacker was not a member of the endowment rank when the suicide amendment was adopted, and did not make his first application for membership until February 8, 1894, more than one year after the adoption of the amendment, which application, as well as the subsequent one of March 10, 1894, for an increase of insurance, contained the condition against suicide contemplated by the amendment.    There had been no publication of the amendment prior to January 20, 1893, the date of Stein's application, while, in the present case, there had been the fullest publication.

The controlling fact underlying the decision in the Stein case was, of course, the want of power in the board of control to adopt the suicide amendment, coupled with the failure of the supreme lodge to approve or ratify the action of the board in so doing prior to Stein's decease.

Nothing is better settled than that, under the terms of the contract involved herein, subsequently enacted laws for the government of the endowment rank are just as binding upon the member and his beneficiary as those in force at the time of the issuance of the certificate.    This is the established doctrine. 1 Bacon on Ben. Soc., secs. 185, 186, 188, pp. 302–307, 311 *et seq.; Supreme Commandery* v. *Ainsworth,* 71 Ala., 449. This is not disputed in the case upon which this court relied in

deciding the Stein case. On the other hand, it is announced as too plain to be questioned. *Supreme Lodge* v. *La Malta*, 31 S. W. Rep., 493. In the Stein case there is a tacit recognition of the force of subsequently adopted laws, and the decision turned upon the fact that there had been no subsequent ratification or adoption by the supreme lodge, prior to Stein's decease, of the suicide amendment. passed by the board of control. *Supreme Lodge* v. *Stein*, *supra*. The documents before the court, under the written agreement of counsel, show that the suicide amendment was adopted by the board of control January 12–13, 1893, and that it was ratified and adopted by the supreme lodge, together with the other general laws passed in the same manner, on September 7, 1894, more than two years prior to the death of Schanzenbacker. See Laws, etc. (1892), p. 341, 342; Laws, Revision of March 1, 1894, p. 38; Record of Proceedings of Supreme Lodge, 18th Convention, 6687, 6690, 6876, 6904.

It is claimed, however, that the writing called the "Supreme Constitution," adopted September 1, 1894, reserves to the supreme lodge certain rights, and throws certain formalities around the enactment of laws. These powers reserved to the supreme lodge can, of course, be exercised by the supreme lodge, and all that the defendants contend for is that there was, on September 7, 1894, long prior to Schanzenbacker's death, an exercise of such part thereof as was involved in the ratification and adoption of the general laws governing the endowment rank, as set out in the report of the board of control, including the suicide amendment.

At the same session of the supreme lodge at which this constitution was adopted, and six days after its adoption, the committee of the supreme lodge on endowment rank, to whom had been referred the third biennial report of the board of control, showing all of the legislation of said board for the government of said rank, including and presenting with great distinctness said suicide amendment, reported that they fully concurred in said

legislation, and approved the same in all its details; and, on the day following, the said report was duly adopted by the supreme lodge.    Record of Proceedings, pp. 6687, 6690, 6876, 6904.

It cannot be denied that this ratification and adoption of the legislation of the board of control by the supreme lodge gave it all the authority it could have derived in any way from the latter body.    The approval of the supreme lodge was sufficient. See *Daughtry* v. *Knights of Pythias*, 20 So. Rep., 712, cited with favorable comment in the Stein case.    But opposing counsel insist that because this action of the supreme lodge does not appear in the guise of a statute enacted by that body according to the formal directions of the "Supreme Constitution," that it is therefore nugatory.

The soundness of this argument depends upon the nature of the constitution.    If it has any greater authority in controlling the action of the supreme lodge—the body that adopted it— than any other enactment of the same body, there might be some reason in the contention that it should prevail, otherwise not.    On this subject the authorities leave no room for doubt. "Rules adopted for the government of an association are all by-laws, and that whether some of them are called such or not. What is often termed the 'constitution' of a benefit society is merely a code of by-laws under an inappropriate name."    5 Am. & Eng. Enc. L. (2d ed.), 87; 1 Bacon on Ben. Soc., 79. The so-called constitution and the laws for the government of the endowment rank, adopted a few days later, are both merely by-laws, and if there is any conflict, which we deny, the by-law last enacted must control.    *Supreme Lodge K. of P.* v. *Knight*, 20 N. E. Rep., 483, s.c. 117 Ind., 489.    It is not essential to their validity that the adoption of by-laws should be attended with any particular formality, nor is it necessary that they should be evidenced by any writing.    *Bank of Holly Springs* v. *Pinson*, 58 Miss., 421; Boisot on By-laws, secs. 8 to 20, inclusive; 5 Am. & Eng. Enc. L. (2d ed.), 91, and cases cited.

But if the so-called constitution is of higher authority than the subsequently adopted regulations for the government of the endowment rank, is there nothing in that instrument to disclose how it should be construed with reference to the laws for the government of the endowment rank adopted at the same session of the supreme lodge? If we turn from the general provision relied on by opposing counsel to the particular provision relating to the endowment rank, "or insurance branch," as it is often called, we find that this very constitution provides that it "shall be governed by such laws as the supreme lodge may enact or authorize." Sec. 2, art. 12, const.; p. 6967, Record of Proceedings. "Or authorize," that is to say, such legislation of the board of control as might receive the sanction of its approval.

Again, by sec. 6, art. 15, of this "Supreme Constitution," adopted September 1, 1894, it is provided that "the laws heretofore enacted for the government of the endowment rank and in force at the date of the adoption of, and so far as they do not conflict with, this constitution, shall continue in force as the laws for the government of the insurance branch until superseded by statutes duly enacted."

The laws for the government of the endowment rank were necessarily those that had been adopted by the board of control, for those laws formulated the application and certificate of membership that constituted the contract, without which there would have been no *modus* for the transaction of business. By this provision of the so-called supreme constitution, they were continued in force until superseded by statutes duly enacted, from which statutes duly enacted by the supreme lodge they are made plainly distinguishable by the use of appropriate terms. All such laws as did not conflict with said constitution were to be continued in force; and in the suicide amendment there is nothing that conflicts with any portion of the constitution.

The appellant insists that it is not shown that the suicide

amendment was subsequently enacted in the manner prescribed by the so-called constitution, or in the sense in which the word " enacted " is used in the certificate sued on.    This is a mere caviling over terms.    The essential thing to be ascertained is, had the supreme lodge, either by original action or by approval and adoption of the action of the board of control, given to this amendment the impress of its power and authority ?    Aside from this, however, it is important to observe that the obligatory force of the certificate, by its terms, depends upon the observance of all the conditions expressed in the application, and the requirements of all laws governing the endowment rank then and there " in force " (as well as enacted).    Of like significance is the fact that the charter of the supreme lodge prescribes no mode in which by-laws shall be adopted, and authorizes the establishment of the rank " upon such terms and conditions, and governed by such rules and regulations, as to the supreme lodge may seem proper."    Section 9, Charter (amended act).    That this suicide amendment was a rule or regulation that seemed proper to the supreme lodge is too plain for argument.

Argued orally by *Marcellus Green*, for the appellant, and by *T. A. McWillie*, for the appellee.

WHITFIELD, J., delivered the opinion of the court.

The present order of Supreme Lodge, Knights of Pythias, is a new corporation, acting under charter granted by act of congress, June 29, 1894, and accepted by the order, effective as of said date.    There are two constitutions known to this order— the constitution of the order itself, called the " supreme constitution," and the " constitution of the endowment rank."    In the first, " supreme constitution," that of the old corporation, it was provided (article 14) that " all laws," etc., " of the supreme lodge should become of force from date of the publication of the official journal of the supreme lodge, unless otherwise provided by the supreme lodge."    This is not now in

force, there being substituted for it in the present supreme constitution, adopted September 1, 1894, section 19, which provides that "all statutes shall take effect sixty days after final passage, unless otherwise therein provided." Publication of the laws in the official journal, therefore, does not now enter into the question of their validity.

The resolution putting in force the suicide amendment was adopted by the supreme lodge September 7, 1894, and, as more than sixty days elapsed thereafter before the insured's death, that question is eliminated, and the supreme lodge itself having adopted this suicide amendment by the passage of the resolution, the sole question in this case is whether the mode of its adoption was proper. Very stringent provisions are set forth in the present supreme constitution as to how laws of the supreme lodge—"supreme statutes"—shall be enacted, and as to how that supreme constitution shall be amended. But both the supreme constitution and the constitution of the endowment rank are wholly the acts of the corporation (the order), and in no sense any part of the charter (the governing statute, the said act of congress). And that act of congress uses, in its fourth section, the word "constitution" in its accepted legal signification. Now, these constitutions are of no higher dignity than by-laws. All are, alike, the creations of the corporations, and the power which creates can alter or repeal. So far, therefore, as the mere mode of enacting the law—the suicide amendment—is concerned, it must necessarily follow that the adoption of the suicide amendment by the resolution was a repeal of the stringent provisions of the supreme constitution referred to, since the power which first enacted them was competent to repeal them by the passage of any law in a different mode. The valid passage of a law by the supreme lodge, in any mode not prohibited by its charter or the general law of the land, is necessarily a repeal of a previous law passed in any other mode prescribed by the same supreme lodge—the same source of power. The authorities make this perfectly clear.

In *Supreme Lodge* v. *Knight*, 117 Ind., 495 (20 N. E., 483), it is said: " Charters are not created by the act of the corporation or association, but are granted by the sovereign power of the state.  A constitution of a voluntary association or a corporation is nothing more than a by-law under an inappropriate name.  The power that can enact a by-law, whether called a constitution or not, can alter or abrogate it, unless some higher rule restrains or prohibits a change or repeal.  When the authorities speak of a charter, they mean an essentially different thing from a law or constitution of the association's own creation.  What counsel call a charter is nothing more than a code of laws, established, not by the sovereign power of the government, but by the creature of that power—the corporation or association. The most that can justly be said is, that the later by-laws are in conflict with the earlier.  There is, therefore, no clashing between corporate utterances and charter provisions."  And this was said by Elliot, C. J., speaking of provisions of the supreme constitution of the order itself.

In *Richardson* v. *Society*, 58 N. H., 188, the court says: " Complaint is made that the amendment of by-law 13, requiring a two-thirds vote for the admission of new members, was not properly and legally enacted, because its passage was not obtained by a vote of two-thirds of those present, according to by-law 12, requiring a vote of two-thirds of the members present to alter or amend the by-laws of the society.  .  .  .  By-law 12 was no part of the charter or constitution of the society, and not a law for the guidance of its officers and agents.  It was an enactment made by one meeting of the society to govern the proceedings of future meetings, and was inoperative beyond the pleasure of the society, acting by a majority vote at any regular meeting.  The power of the society, derived from its charter and the laws under which it was organized, to enact by-laws, is continuous, residing in all regular meetings of the society so long as it exists.  Any meeting could, by a majority vote, modify or repeal the law of a previous meeting, and no

meeting could bind a subsequent one by irrepealable acts or rules of procedure. The power to enact is a power to repeal; and a by-law requiring a two-thirds vote of members present to alter or amend the laws of the society, may itself be altered, amended or repealed by the same power which enacted it. Ang. & A. Corp., 459; *Com.* v. *Mayor, etc.*, 5 Watts, 152, 155; *Christ Church* v. *Pope*, 8 Gray, 140, 142. The society, by a majority vote, might amend or repeal by-law 12. By a like vote they might adopt any mode for the admission of members.'' This is directly in point.

Mr. Thompson, in Commentaries on the Law of Corporations (vol. 1, sec. 943), lays down the same rule, saying: ''If the charter is silent as to the formalities to be observed, a by-law may be adopted by acts as well as by words.'' To the same effect is Mr. Freeman, in his learned note to *Sayre* v. *Association*, 85 Am. Dec., 618. The case of *Kent* v. *Mininy Co.*, 78 N. Y., 159, is easily susceptible of misconstruction. It is properly discriminated in *Poultney* v. *Bachman*, 31 Hun, 53, which upholds our view. There is a dictum to the contrary of our view in *Heintzelman* v. *Association*, 38 Minn., 140 (36 N. W., 100), but it is clearly erroneous, and the point decided is not affected by the dictum. And this dictum is all that exhaustive search has disclosed in conflict with this settled view, above laid down.

It is said, however, that the resolution adopting the suicide amendment is in no sense a by-law; that it is not a by-law adopted in any mode; not in its nature a by-law, nor in its mode of adoption; not a by-law at all. But Mr. Thompson says (vol. 1, Corp., sec. 936): ''A resolution is not necessarily a by-law, though a by-law may be in the form of a resolution.'' And the same doctrine is announced in *Drake* v. *Railroad Co.*, 7 Barb., 540, and in 5 Am. & Eng. Enc. L. (new edition), top of page 88. The mere fact that a by-law is in the form of a resolution is not determinative. There is much seeming force, at first blush, in the contention most earnestly insisted on, that the as-

sured's rights are not to be taken away by this suicide amendment, adopted in this resolution, made by the adoption of this document No. 159, "in a corner," as it is said.

But two considerations are a perfect answer to this contention: (1) That the insured contracted, in his application and certificate, to be bound by "all laws then in force or thereafter to be enacted by the supreme lodge;" and (2) nearly two years elapsed after the law went into force before the insured's death. In the very case relied on by learned counsel for appellant (*Hobbs* v. *Association* (Iowa), 47 N. W., p. 984), it is said: "But it does not follow that they will be bound by all those [by-laws] adopted after their contracts of membership are made. Whether they will be or not will depend upon the terms of their contract. If that provide that members shall be bound by all articles or by-laws which may at any time be adopted, we know of no reason why it is not valid. In such cases, changes made are not in violation of the contract, but are in harmony with it." That is the case here, and the supreme lodge—the source of power—having adopted the law, the insured is bound by it. To this point are, emphatically, *Bowie* v. *Grand Lodge* (Cal.), 34 Pac., p. 104; *Supreme Commandery* v. *Ainsworth*, 71 Ala., 436; *Stohr* v. *Society*, 82 Cal., p. 560 (22 Pac., 1125); *Supreme Lodge* v. *LaMalta* (Tenn. Sup.), 31 S. W., 493; *Supreme Lodge* v. *Stein*, *ante*, p. 107, and many other authorities. It will be noted that this by-law steers clear of the objection that it is not general and equal in its operation, and does not fall under the condemnation of cases like *Budd* v. *Railway Co.* (Ore.), 15 Pac., p. 661. Stein's case turned upon the fact that this very by-law was there adopted by the board of control, whose action was a nullity. Here, the supreme lodge itself—the true source of power—has enacted it. It follows from these views that the judgment must be, and it is hereby,

*Affirmed.*