Gwin v. Waggoner.

---

## GWIN v. WAGGONER *et al., Appellants.*

1. **Deed**: PRESUMPTION. A deed absolute on its face is *prima-facie* evidence of a sale of the property described in it, but its true character may be shown by competent and satisfactory proof.

2. ———: ———: COTEMPORANEOUS AGREEMENT. A deed absolute on its face, accompanied by a cotemporaneous agreement between the parties pertaining to the same transaction, showing that the deed is not absolute, but that the payment of the purchase price is dependent upon a certain contingency, should be construed in connection with such agreement, and would not alone raise a presumption of sale.

3. **Contract**: NEGLECT OF PARTY TO READ. The mere failure of a party to a contract who labors under no disability or infirmity, through his own fault and neglect, to read it, or inform himself as to its contents, is not sufficient to annul or overcome its legal effect as to him.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED AND REMANDED.

*Karnes & Krauthoff*, with *Gates & Wallace*, for appellants.

(1) The second instruction given for the plaintiff totally ignored the defense and the evidence adduced in support of it. The case was presented in a one-sided aspect. Unwarrantably, the defendants were saddled with the burden of proof and declared to rest under a presumption and a *prima-facie* case, and then to make the resulting prejudice to their side of the case complete, no notice is taken of their defense, but their evidence is treated as utterly immaterial. *Gilson v. Railroad*, 76 Mo. 282, 286; *Sullivan v. Railroad*, 88 Mo. 169, 182. (2) Under the written evidence, the verdict should have been for the defendants. This written evidence consisted, in part, of the agreement of December 12, 1880. By its terms this agreement is a complete defense to this action. It is true, the law permits the plaintiff to overcome the effect of this agreement by proof that he was fraudulently induced to make it, and that it was contrary to the true agreement between the parties. Not only is the burden of proving these facts upon the plaintiff, but he must do so by strong and convincing evidence, indubitably establishing the fraud. Otherwise, it is conclusive, and its terms cannot be varied or abrogated by parol. 2 Whart. Ev., sec. 932, and cas. cit. in notes; *Dunn v. White*, 63 Mo. 181, 185; *Langley v. Brown*, 2 Atk. 195, 202; *Greenfield's Estate*, 14 Pa. St. 489; *Faucett v. Currier*, 115 Mass. 20. This fraud must be shown by "distinct and convincing proof" (*Greenfield's Estate*, *supra*) which must be "clear, precise and indubitable." *Martin v. Berens*, 67 Pa. St. 459, 463; *Bailey v. Smock*, 61 Mo. 213, 218.

*C. O. Tichenor* and *A. Comingo* for respondent.

(1) The instructions, given on the part of the plaintiff, present the issues made by the pleadings in the case; and they are in harmony with those given at the

instance of defendants. The second of plaintiff's instructions tells the jury that it devolves on defendants to prove, by a preponderance of evidence, the defense set up in their answer, and that the general warranty deed from plaintiff to defendant was *prima-facie* evidence that the transaction was a sale. Such was its character. *Prima-facie* evidence is such as, in judgment of law, is sufficient to establish a given fact; and which, if not rebutted, is sufficient for that purpose. *Kelly v. Jackson*, 6 Peters, 622; *Baxter v. Ins. Co.*, 7 Mass. 275; *Lancaster v. Ins. Co.*, 62 Mo. 121; *Flournoy v. Worden*, 17 Mo. 435; 1 Starkie's Evidence, p. 544. (2) It was the province of the jury to find their verdict upon consideration of all the evidence in the case, and not upon the written evidence alone. This they did, and their verdict is abundantly supported by the evidence. Even if it were against the weight of evidence, this court would not disturb it. To this rule there is no known exception in this state or elsewhere. *Hamilton v. Berry*, 74 Mo. 117; *McKay v. Underwood*, 47 Mo. 49; *Price v. Sherrill*, 49 Mo. 396.

RAY, C. J.—Plaintiff brought this action to recover a balance of fifty-five hundred dollars with interest, alleged to be due him by defendants, on account of a sale to them, of his one-fifth interest in the "Tilden Mine," located in the state of Colorado. Plaintiff obtained judgment, and defendant has appealed, and assigns for error certain exceptions taken in the progress of the trial to the exclusion of evidence, offered in their behalf, and to the action of the court in giving instructions for plaintiff, and certain alleged misconduct of the jury.

Speaking generally, it may be said that the principal and controlling question involved in the cause, as shown in the evidence on both sides, and in the instructions asked and given at the instance of the parties, is

whether the defendants were, in fact, purchasers of said mine and of plaintiff's interest therein, under a conveyance thereof to them by plaintiff, or whether said conveyance was made by plaintiff and others to Gates and Waggoner, two of these defendants, with the knowledge and understanding, that said mine was, in fact, being sold by, and through, said defendants and one O. P. Chisholm, to certain New York parties, and with the understanding that defendants were to be liable for the purchase money, only in the event that they received the same, from said Chisholm or said parties in New York.

The starting point of the transaction seems to be January, 1879, at which time, plaintiff and other owners of said mine executed their bond to defendants, the main purport of which was to give defendants the option or right of election to purchase said mine, at a specified sum, on or before December first, following. Defendants contracted further to expend the sum of five thousand dollars in developing said mine, and were to have this sum refunded to them on the sales of ore taken from the dumps of the mine, in the event that they should elect not to purchase the same.

A second bond was afterwards, but on the same day, also executed by plaintiff and his co-owners to defendants, which recited a sale of their interests, being four-fifths of said mine, to defendants, and whereby upon the payment or deposit in bank of the specified sum by defendants, on or before said December first, 1879, the said owners undertook to execute and deliver proper deeds for said mining property. Said instrument is, we apprehend, in legal effect, the ordinary title bond for a deed.

No effort was, it seems, ever made by either party to enforce said bonds or either of them. Their importance if any was, unless we have misconceived the case,

mainly as evidence supposed to bear upon the main question whether defendants were in fact purchasers of said mine, and upon the right of defendants to retain certain sums afterwards collected by them and arising from the sale of the said mining property.

Plaintiff claims and he so testifies that after the expiration of the bond, which provided for a compensation of twenty-two thousand dollars to each of said owners, for his interest in said mine, said S. K. Knox, one of these defendants, offered him in Colorado nine thousand dollars for his one-fifth interest, stating at the time, that he had bought out the other owners at that figure, which proposition plaintiff says he accepted with the further agreement that his expenses to Independence and return would be borne by said Knox. Some four or five days afterwards, plaintiff and others, went to Independence, as plaintiff testifies, to make the necessary deeds and to collect the money. At this time, to-wit: December 11, 1879, whilst at Independence, plaintiff and others executed and acknowledged a deed of general warranty to Gates and Waggoner, two of these defendants, conveying said mine, which said deed was placed of record in Chaffee county, Colorado, where said mine was situated, in January, 1880. At the same time, plaintiff and other owners, of said mine executed a certain other and further agreement, as follows:

"This agreement, made and entered into this twelfth day of December, 1879, by and between J. S. Shank, J. A. Gwin and James W. Shumate, parties of the first part, and William H. Waggoner and Geo. P. Gates, parties of the second part, witnesseth:

"That said parties of the first part have this day executed and delivered deeds to said parties of the second part conveying all of their right, title and interest in and to the Samuel J. Tilden Mining Lode, situated in Chaffee county, Colorado. Upon delivery of

said deed said parties have this day received cash payment from said second parties as follows, to-wit: Said John S. Shank the sum of one thousand dollars ($1,000.00); said John A. Gwin the sum of one thousand dollars ($1,000.00), and James W. Shumate, on his individual one-tenth ($\frac{1}{10}$) interest in said mine or lode, the sum of one thousand dollars ($1,000.00), the receipt of all which sums is hereby acknowledged. It is further agreed and understood as, follows, to-wit: That the remaining purchase money for said lode is to be paid to said parties of the first part when a sale (now being negotiated) of said lode is made and completed to one O. P. Chisholm, and out of money arising from such sale. Further payments from such money, arising from said sale to said Chisholm will be due the parties of the first part as follows: To said John S. Shank the sum of eight thousand dollars ($8,000.00), to said John A. Gwin the sum of eight thousand dollars ($8,000.00), and to said James W. Shumate the sum of thirty-five hundred dollars ($3500.00) for his one-tenth ($\frac{1}{10}$) individual interest in said mine, and the further sum of forty-five hundred dollars ($4500.00) for the interest of his children in said mine, when a guardian's deed, duly executed according to law, is delivered to said parties of the second part. It is further expressly understood and agreed, that if no sale is made of said lode to said Chisholm, then the said parties of the second part are not to be held for the further payments above mentioned, or any part thereof.

"It is further agreed, that said sale to said Chisholm is to be completed, if at all, in sixty (60) days from this date.

"(Signed),     JOHN S. SHANK.
"(Signed),     JAMES W. SHUMATE.
"(Signed),     JOHN A. GWIN.

"We, Mary O'Neal and John S. Shank, have this day executed a deed for our one-fifth interest in the Samuel J. Tilden lode and receive in cash the sum of one thousand dollars. The further sum of eight thousand dollars is yet due us, to become payable to us only, subject to the conditions and stipulations of the above contract.

"Witness our hands this fifteenth day of December, 1879.

"( Signed),                    MARY O'NEAL,
                          "JOHN S. SHANK."

On December 16, thereafter, defendants by quitclaim deed, conveyed the said property to O. P. Chisholm of New York, which said deed was filed for record, in Colorado, in April, 1880. Said Chisholm afterwards deeded the property to the "Tilden Mining Company," a corporation of New York, which paid twenty thousand dollars cash therefor, and gave its notes for fifty-five thousand dollars, secured by stock of said company.

Said Chisholm paid over to defendant Gates, it seems, the sum of ten thousand dollars, in March, 1880, of which sum said Gates testifies he paid twenty-five hundred dollars, in different amounts, to three of the original owners of said mine, and retained the rest, on the amounts due him and Waggoner, which consisted, as they claimed, of said five thousand dollars expended by them, in developing said mine, under said executory contract of purchase and seven thousand dollars advanced by them, under a subsequent arrangement for the same purpose, and for the sum of two thousand dollars, which they advanced and paid two of said original owners at the time the deed and arrangement were made, at Independence. Said Chisholm, in May, 1880, also paid ten thousand dollars to defendant Knox, which sum defendants Gates and Waggoner allege in their answer was paid to Knox, without their consent, authority or knowledge.

At the time of the execution of said deeds and agreements at Independence, plaintiff Gwin and other owners received the sum of one thousand dollars each, and in May, 1880, said S. K. Knox paid plaintiff the further sum of twenty-five hundred dollars cash, making payments also to other owners of said mine, leaving, as is alleged, a balance due plaintiff of fifty-five hundred dollars. At the same time, to-wit, in May, 1880, the following agreement read in evidence, by plaintiff was executed :

"This is to certify that the undersigned, George W. Knox, John S. Shank and John A. Gwin, do hereby agree to accept certain payments due us on the Tilden mine, as follows, to-wit : May 17, 1880, two thousand dollars cash to the said Knox.and twenty-five hundred dollars to the said Gwin, June 5, 1880, four thousand dollars cash to each, and June 20, 1880, one thousand dollars cash each and five hundred shares of the capital stock of the Tilden Mining Company, of New York, to each of the above mentioned parties, with the express understanding, however, that work may go on as the party now in charge of the mine may prefer.

"Witness our hands and seal, this, the 17th day of May, A. D. 1880.

"GEORGE K. KNOX.     ( Seal.)<br>
'J. S. SHANK.          ( Seal.)<br>
"JOHN A. GWIN.        ( Seal.)"

"Witness :

"I hereby agree to the above and accept the same on the part of myself and partners.      S. K. KNOX."

This agreement, if authorized and made by defendants, is a modification of said contract of December 12, 1879, in respect to the payment of the balance of the purchase money, and in respect to the said acceptance by plaintiff, of said shares of the capital stock of said mining company, and is, upon plaintiff's theory, the close and consummation of the various transactions

between the parties. The plaintiff declares thereon in his petition upon the theory that, in pursuance of the previous agreement to pay plaintiff for his said interest, defendant Knox acting for himself and his co-defendant thereby agreed to pay plaintiff the balance due him, at the times and upon the terms therein set forth.

In this behalf, defendants Waggoner and Gates say that they were not parties to said agreement, that they knew nothing about the same until long afterwards, and that said S. K. Knox was not acting for them, and had no authority to act in their behalf, either as a co-partner, agent or otherwise. Defendants also claim, and evidence in their behalf tends to so show, that they decided not to purchase the mine, which had been bonded to them, as aforesaid. That in October and November of said years, plaintiff and others of said owners were endeavoring to sell the mine to various parties, and that they finally agreed to sell the same to one O. P. Chisholm, for some New York parties, for nine thousand dollars, per share, and to meet defendants Waggoner and Gates, and said Chisholm, at Independence, Missouri, and close the trade. That they recognized that said Waggoner and Gates had a claim upon said mine, for moneys advanced by them to work and develop said mine ; and that the deeds were made to Waggoner and Gates, to protect them, for the money they had advanced and expended, and for convenience, and to enable them to facilitate a sale thereof, to other parties.

In view of our disposition of the case, this we think sufficiently shows the general nature of the case and respective theories of the parties.

Two instructions were given for the plaintiff, the second of which was as follows :

"2. You are further instructed that defendants deny that they purchased the interest of the plaintiff and other original owners of the property described in

the petition, and maintain that they acted as agents for said owners. You are further instructed that the burden of showing by a preponderance of evidence, that in all the various transactions concerning, or relating to the transfers of said property, they so acted; that is, that they acted as agents of said owners, rests on defendants. You are further instructed that the deeds executed by said original owners are *prima-facie* or presumptive evidence that said transaction was a sale."

This instruction, and the last paragraph thereof, declaring said deeds *prima-facie* or presumptive evidence that said transaction was a sale, is criticised and complained of as error and the present disposition of the case must, we think, turn upon the exceptions taken in this behalf. Ordinarily the doctrine of this instruction, in respect to the deed, is we think manifestly correct, but in this case the deed is we think to be read in connection with the said agreement hereinbefore set out, and made and executed at the same time. They are cotemporaneous instruments, between the same parties, about one and the same transaction, and are to be construed and read together as if embodied in one and the same instrument. This is familiar doctrine, and some of the numerous authorities to this effect are cited in the brief of counsel for defendants.

The said deed is absolute on its face, and, in ordinary cases, would purport a sale of the described property, but the true character of such deeds, as for instance, that the same was a mortgage or the like, may be shown by competent and satisfactory proof. The said agreement of even date with said deed, it will be observed, among other things, says, " that the remaining purchase money for said lode is to be paid to said parties of the first part (Gwin and others), when a sale, now being negotiated, of said lode is made and completed to one O. P. Chisholm, and out of money, arising from such sale, * * * it is further expressly understood

and agreed that if no sale is made of said lode to said Chisholm, then the said parties of the second part (defendants Gates and Waggoner) are not to be held for the further payments above mentioned, or any part thereof."

The meaning of this agreement, if it has any at all, is that said defendants were to be held liable for the balance of said purchase money only in the event and contingency of said sale to Chisholm, and not, absolutely, as they would be as grantees in said deed. This we think overcomes and destroys the *prima-facie* or presumptive evidence of an absolute sale, which said deed would otherwise create. In the absence of other evidence, and with the deed and said agreement both in evidence, the law would not raise the presumption which the instruction declares.

The instruction, in so holding, manifestly disregards and ignores the said agreement cotemporaneously executed with said deed, which said agreement raised we think a rebutting presumption, of at least equal force and value as that created by the deed. The agreement might perhaps not improperly be regarded, as explanatory of and a construction of the deed by the parties themselves. The deed, for example, expressed a consideration of twenty-two thousand dollars per share, receipt of which was acknowledged, whereas, the actual and true consideration, as plaintiff testifies, was nine thousand dollars per share, for each interest, which is the consideration shown by the agreement, which also shows that plaintiff and his co-owners had each received one thousand dollars cash, and were to thereafter receive the balance or further sum of eight thousand dollars. In addition, the transaction of the parties as the same appears by the deed, was an unconditional and absolute sale, the one party paying so much money, to-wit : Twenty-two thousand dollars for each one-fifth interest, and the other, making the absolute deed of

general warranty, to the property. But, by the agreement, the parties in effect say that there was no absolute sale, and no deed, that the same was merely formal, and that the liability of defendants for the purchase money was contingent upon a sale, in process of negotiation to said Chisholm.

And further, the instruction was erroneous as to the defendant Knox, who was not a grantee or party to said deed. As to him, this paragraph of said instruction was manifestly inapplicable. He was, however, as counsel for plaintiff suggest in this behalf, a party in the first instance with his co-defendants to the bonds or executory contracts, of said January 16, 1879, and received ten thousand dollars, or one-half the cash payments made to Chisholm by the New York parties or company, of which sum he paid twenty-five hundred dollars to plaintiff under said agreement of May, 1880, and which agreement he endorsed and signed for himself and partners. If any presumption, or *prima-facie* case arose as to him, it was in virtue of said agreement of May, 1880, and the said facts and other circumstances in evidence, and not by virtue of said deed. Defendants Gates and Waggoner did not sign said agreement, and if parties thereto were such in virtue of said acceptance and endorsement thereof by said Knox, for himself and partners, which they were alleged in the petition to be, but which said relation was specially denied by them in their separate answer.

Said agreement of May, 1880, is made in pursuance of and evidently contemplates a previous agreement, which is thereby modified. This is plaintiff's theory, as shown by the petition, and first instruction, given at his instance, in which the jury are required to find that defendants, or said Knox acting for and on behalf of all three defendants, as partners, proposed and agreed to pay plaintiff the alleged balance at the times and on the terms therein stated.

In view of said agreement of December 12, 1879, and of said agreement of May, 1880, to which defendants Gates and Waggoner were not parties, unless shown by evidence, *aliunde*, to be such, which said extraneous evidence, plaintiff undertook to supply, there was, we think, as to them, no such *prima-facie* case, or presumption of law, as contemplated in said paragraph of said second instruction, and the liability of defendants, if any, should have been made to depend upon the evidence, in its entirety, the whole case, upon all the facts and circumstances, being for the jury.

In respect to the preparation and execution of said agreement of December 12, 1879, which is, as we have said, inconsistent with said deed, executed at the same time, it appears, as plaintiff testifies, that he wanted some paper to show the balance due him, and thereupon said agreement was prepared, that he did not read it but signed it without knowing what was in it, supposing it to be all right. That defendant Gates gave it to him, and that it was sometime later before he knew its contents. Mr. Wallace, who drew the agreement, testified for the defendants that he prepared the same on directions and information given him for that purpose by plaintiff Gwin and defendant Gates. Defendants' evidence tends further to show that the contract was read, and that said last clause, requiring said sale to be completed in sixty days, if at all, was added and inserted at the suggestion of some of said original owners of said mine.

We deem it unnecessary to review, at length, the conflicting evidence in this behalf, as upon the plaintiff's own showing, it was, we think, his own fault and negligence, if he in fact did not read the said instrument. He is manifestly not an ignorant man, nor does he labor under any disability or infirmity, so far as appears. On the contrary, the various dealings and transactions, to which he is a party, show him to be

accustomed to making contracts, and managing import-ant business concerns.

Under these facts, the mere failure of plaintiff, through his own fault and neglect to read said agree-ment, or inform himself as to its contents, was not suffi-cient to annul or overcome the legal effect of said instru-ment. It is not now necessary to say, or decide, whether the matters set up, as a special defense in the answer, were admissible under the general issue.

For these reasons therefore the case, which was one of conflicting evidence, was we think improperly put to the jury under said second instruction, and defendants were we think thereby prejudiced in their contention before the jury as to the main question in the cause. The judgment is therefore reversed and cause remanded. BLACK and BRACE, JJ., concur; SHERWOOD, J., dis-sents; BARCLAY, J., not sitting.