THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF MISSOURI, Plaintiff, v. JEANETTE E. SATER *et al.*, Defendants and Interpleaders; JEANETTE E. SATER *et al.*, Appellants; RODGERS CARTER, etc., Guardian, Respondent.

St. Louis Court of Appeals, April 21, 1891.

1. **Mutual-Benefit Societies**: ADMISSIBILITY OF ORAL EVIDENCE TO VARY OR EXPLAIN CERTIFICATE OF INSURANCE. A mutual-benefit society issued to a member a certificate of insurance providing that the insurance should be paid to J. E. S., "and my heirs bearing relation to me of wife and children." He left surviving him J. E. S., his second wife, and children by her as well as by his first wife. *Held* that the terms of the certificate were so plain and free from ambiguity that parol or other extrinsic evidence was not admissible to establish an intention on the part of the member to provide not for all his children but only for those by his second wife.

2. ———: CHANGES IN BY-LAWS AFFECTING INSURANCE. Subsequent to the issue of such certificate of insurance to such member, the mutual-benefit society adopted a by-law, making the written application of the member a part of the contract of insurance. *Held* that the contract of insurance could not be modified or changed by the society without the express consent of the member, and that, therefore, the by-law referred to could not affect the construction of the prior certificate.

3. ———: REFORMATION IN EQUITY OF CONTRACT OF INSURANCE FOR MISTAKE. In order to warrant the reformation of such certificate by a court of equity for mistake, the mistake must be mutual and not unilateral, that is, both the society and the member must be parties to it; the evidence of it must, also, be clear and convincing.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*W. F. Smith* and *D. D. Fassett*, for appellants.

(1) The grand lodge having confessed its liability, and paid the fund into court, the sole question is, what did Dr. Sater, viewed in the attitude of a testator, intend;

and this is to be determined from a consideration of the application, the laws of the order, certificate, and status of the two sets of children, and other surrounding facts. *Snyder v. Ins. Co.*, 33 Mo. App. 64; *Am. Ass'n v. Kirgin*, 28 Mo. App. 30; Bacon on Ben. Soc., sec. 255. (2) The application and certificate are to be read and construed together in insurance cases in determining the rights of the parties, especially where each refers to the other. This rule is elementary, and the position of appellants in this case harmonizes with that rule. 1 Wood on Insurance, sec. 150, and note; *Philbrook v. Ins. Co.*, 37 Me. 137; *Ins. Co. v. Hogan*, 2 Wash. C. C. 4; Bacon on Ben. Soc., secs. 131–134, 255; *Coleman v. Knights of Honor*, 18 Mo. App. 194; 1 Redfield on Wills, p. 434; 2 Redfield on Wills, p. 19. (3) It is a well-recognized rule of construction that written instruments made up partly of printed matter should have more weight given to the written words than to the printed matter, and this rule is specially applicable to the case at bar. Bacon on Ben. Soc., sec. 177; Bishop on Contracts, 7 Johns. 385, sec. 413. (4) Under the facts in evidence the beneficiary certificate should be reformed if it stands in the way of the widow and her children, since it does not express the manifest wish of Dr. Sater, owing to the carelessness and incompetency of the young clerk. Courts of equity reform instruments where the mistake was concerning the legal import and effect of the terms used. Bacon on Ben. Soc., sec. 278; 31 Conn. 517; 48 Mo. 367; 45 Mo. 157; 15 Mo. 160. Courts of equity will interfere, and reform instruments not only between the original parties, but also between those standing in privity to them, "such as personal representatives, heirs, distributees, legatees, assigns, voluntary grantee or judgment creditors." 43 Mo. 185; 6 Blackf. 448; Story's Eq., sec. 165; 3 Miss. 67.

*J. H. Zumbalen* and *J. R. Carter*, for respondent.

(1) The rights of the respective claimants are to be determined by the terms of the beneficiary certificate

alone. The application made by Dr. Sater is not a part of the contract. 1 Wood on Insurance, sec. 150 ; Bacon on Ben. Soc., secs. 183, 184 ; *Ins. Co. v. Day*, 39 N. J. L. 89 ; *Ins. Co. v. Mowry*, 96 U. S. 544 ; *Moore v. Ins. Co.*, 34 N. W. Rep. (Iowa) 183. The assured cannot be allowed to show the intention of the parties that another than the one named in the policy should be the beneficiary. Bacon on Ben. Soc., sec. 464 ; *Russell v. Russell*, 64 Ala. 500 ; *Elliott v. Whedbee*, 94 N. C. 115 ; Bliss on Life Ins., sec. 317 ; Niblack Voluntary Soc., sec. 171, 245. By the terms of the certificate the respondents are entitled to participate in the fund. Niblack, Voluntary Soc., sec. 245 ; *Jackman v. Nelson*, 17 N. E. Rep. ( Mass. ) 529 ; *Felix v. A. O. U. W.*, 31 Kan. 81 ; *Koehler v. Ins. Co.*, 66 Iowa ; *Modermott v. Life Ass'n*, 24 Mo. App. 73 ; *Carroll v. Carroll*, 20 Texas, 731. ( 2 ) The appellants have not made out a proper case for reforming the certificate on the ground of a mistake. The evidence is insufficient. *Downing v. McHugh*, 3 Mo. App. 594 ; *Tesson v. Ins. Co.*, 40 Mo. 33. The alleged mistake was not a mutual mistake and was occasioned by the carelessness of the deceased. *Allen v. Carter*, 8 Mo. App. 585 ; Pomeroy, Equity, sec. 1376.

BIGGS, J.—The plaintiff is organized under the laws of the state of Missouri as a charitable and benevolent corporation. In addition to the social and charitable advantages offered by the order, an insurance feature is added. The constitution and by-laws provide that each member, who has received the M. W. degree, and passed a satisfactory medical examination, shall be entitled to receive a certificate of insurance, in which the corporation agrees to pay the beneficiary therein named or designated the sum of $2,000 at the death of the assured, provided the latter has complied in all particulars with the laws, regulations and requirements of the order. As a condition precedent to the issuance of such certificate, the member is required to

make a written application, which accompanies his medical examination, and in this application he is required to designate the person or persons to whom he wishes the money to be paid.

On the tenth day of March, 1885, Dr. Jasper M. Sater was a member of one of the plaintiff's subordinate lodges in the state of Missouri. On that day the plaintiff issued and delivered to him a certificate of insurance, in which it was stipulated that the amount of the insurance should be paid "*to his wife Jeanette E. Sater, and children, his heirs.*"

Dr. Sater died on or about the ninth day of October, 1888, being at the time a member of the order in good standing. He was married twice and left surviving him his second wife, Jeanette E. Sater. He also left surviving him three children by the first marriage and three by the last. The widow and the guardian of her three children claimed that, under the contract of insurance, they were legally entitled to all the insurance money, whereas the guardian of the older set of children insisted that, under the certificate, his wards were entitled to receive three-sevenths of the fund. When the plaintiff found itself beset with these conflicting claims, it paid the money into court and brought this action to compel the rival claimants to settle their disputes in the courts. Such proceedings were had that the several defendants were required to file interpleas, and then plaintiff was discharged from further liability. Hence the present controversy is one between the respective interpleaders.

Upon the trial of the interpleas the circuit court decided that, under the evidence, the money should be distributed ratably between the widow and all the children, that is, to each one-seventh. The widow and her children have appealed.

For a reversal the appellants argue that a policy of life insurance is analogous to a testamentary paper, and that the intention of the assured, viewed as a testator,

must be the paramount and controlling idea in determining the objects of his bounty. Hence it is insisted that, under the peculiar facts of the case, the trial court, in determining the matter at issue, ought not to have limited the inquiry to the terms of the certificate; but that, on the contrary, the certificate ought to have been read in connection with the written application, and that the status of the two sets of children ought also to have been considered in determining to which set of children the words in the certificate were intended to apply.

It is next insisted by the appellants that, if their first position is untenable by reason of the language employed in the certificate, then, under the evidence, the circuit court ought to have reformed the certificate so as to make it express the wish and intention of the deceased as manifested by his written application.

On the other side it is claimed that, under the terms of the certificate, the respondents are entitled to participate in the fund; that, although the order is no longer a party and has no interest in the litigation, yet the respective rights of the interpleaders rest upon, and must of necessity be determined by, the terms of the contract between the order and the assured, which in this case is the certificate only; that, at the time the certificate was issued, the by-laws of the order did not make the application a part of the certificate, neither does the certificate in any way refer to the application so as to make it a part thereof, and that, therefore, the application made by Dr. Sater formed no part of the certificate, and could not be read to vary, contradict or explain its terms. Touching the appellant's second proposition the respondents assert that the evidence fails to make such a case as would authorize a court of equity to reform the certificate on the ground of mistake, for the reason that the uncontradicted evidence showed that Dr. Sater received and accepted the certificate as written without objection; that he paid his

dues until his death; that he died with knowledge of the fact that, under the certificate, all of his children would be entitled to share in the policy, and that he was also advised of the further fact that he could easily, under the rules of the order, have the beneficiaries in his certificate changed.

The discussion of the foregoing legal questions requires of us a brief statement of some additional facts. When Dr. Sater married the second time, he entered into a written contract with the father of his deceased wife, in which he undertook to surrender his right to the custody and control of his children in consideration that their grandparents would rear and educate them. When Dr. Sater made application for the insurance he had three children by his second wife. It appears from the appellant's evidence that he forwarded to the officers of the grand lodge two applications; that the first was returned to him on account of some informality; that he made out and sent another, upon which the certificate was issued; that the first certificate contained this direction: "I hereby authorize and direct that the amount, to which I may be entitled of said beneficiary fund, shall at my death be paid to Jeanette E. Sater and my heirs bearing relation to me of *wife and children;*" that in the second application this paragraph was changed by inserting the word "her" before children, so as to make it read, "*wife and her children.*" The appellants then introduced some evidence to the effect, that it was customary for the order in issuing certificates to follow the directions in the written application as to the beneficiaries; that this particular certificate was made out by a young clerk, and it was supposed by the managing officers that the certificate was issued in accordance with the application. The appellant's evidence also tended to show that Dr. Sater left but a small estate, and that the grandfather of his older set of children was a man of considerable means.

The respondents read in evidence the deposition of Charles L. Curtice, who was the foreman of the local lodge in which Dr. Sater held his membership. We make the following extract from it: "*Q.* State whether or not you had any conversation with Jasper N. Sater prior to his death in reference to this insurance on his life in the said order, and, if so, how long before his death did you have this conversation, and state what this conversation was? *A.* I talked with him twice, the two previous Sundays before his death. The first time I asked him if he was up in his dues and assessments in the lodge, and to whom his certificate was made payable; his answer was my wife and children, but said he would rather it read 'my wife and her children,' as he wanted them (his wife and her children) to receive all the benefits provided they could lawfully do so; or that his heirs in Ohio would waive their claims without any fuss or trouble; as he did not want a law suit. I suggested that the policy could be changed yet, if he so desired it, as an application to the grand lodge accompanied by half a dollar would change it. He said he guessed he would let it stand the way it was, meaning the certificate. On the next Sunday I asked him again about the change in the certificate. He said let it stand. He also said he would like to have his wife and children here to have the money, if they could get it without any trouble. * * * He told me he had three children in Ohio by a former wife, and he hoped they would waive their rights in favor of his wife and children here."

If the persons entitled to participate in the fund are to be determined by the terms of the certificate only, then there can be but little doubt concerning the correctness of the decree of the court below. The words in the policy by which the beneficiaries were designated are "*his wife, Jeanette E. Sater, and children, his heirs.*" By no kind of fair interpretation could this clause in the certificate be made to apply

exclusively to the children of Jeanette E. Sater. The words are so plain and free from ambiguity that there is no room for construction. For this reason the case of *Schneider v. Ins. Co.*, 33 Mo. App. 64, cited and relied on by counsel, is inapplicable. For the same reason parol or other extrinsic evidence as to the intention of the assured in respect of the beneficiaries was inadmissible. We may, therefore, put that view of the case aside.

But it is claimed by the appellants that, as the written application made by the assured was made a part of the insurance contract by the constitution and by-laws of the order, it and the certificate constitute the contract of insurance, and, in determining the *intention* of Sater in respect of the objects of his bounty, both instruments must be read together. If the respondents are correct on the first proposition, they are right on the last. The constitution, by-laws and certificate make the contract of insurance between a benefit society and its members, and we have but little doubt that, if the constitution or by-laws of such a society should expressly provide that the written application of the member for insurance should together with the certificate form the contract of insurance, it would be sufficient to make it so. The difficulty that we encounter in this view of the case is, that the by-law of the plaintiff corporation, which makes the application of a member a part of his contract of insurance, was enacted subsequently to the issuance of the certificate to Sater. At the time Sater became a member, there was no such law. Hence we are of the opinion that the one subsequently adopted in no way affected Sater's contract with the order. As to other amendments to the constitution and by-laws, Sater was bound, but not so as to changes directly affecting his contract of insurance. An insurance contract, such as we have here, is as sacred as any other contract, and it cannot be modified or changed by the society except by the express consent of the

member. If the plaintiff by a mere change in its constitution could import into Sater's contract of insurance his application, thereby making all representations therein warranties, we can see no reason why the plaintiff could not abrogate the contract *in toto.* We passed on this question at the last term in the case of *Hysinger v. Supreme Lodge, etc.*, 42 Mo. App. 627, in which the authorities bearing on the question were collected. Entertaining, as we do, this view, and with the fact conceded that the certificate in no way refers to the application, we can conceive of no principle of law under which Sater's application, and the circumstances surrounding the two sets of children, could be admitted in evidence, if the rule against the admission of parol or other extrinsic evidence to vary a written contract is to be observed. We, therefore, conclude that, unless the appellants have shown themselves entitled to a reformation of the certificate, the judgment of the circuit court must be affirmed.

The power of a court of equity to reform any contract or instrument which by mistake fails to express the intention of the parties is denied by no one. The court in this controversy possessed the authority to reform the certificate, if the evidence in the case warranted such a decree. *Leitensdorfer v. Delphy*, 15 Mo. 106. But all decisions and text-books assert the principle that the mistake must be mutual and not unilateral. 1 Story, Eq., sec. 151; *Gwin v. Waggoner*, 98 Mo. 315; *Allen v. Carter*, 8 Mo. App. 585. It is also a well-settled rule that the evidence relied on to prove the mistake must be clear and convincing. *Downing v. McHugh*, 3 Mo. App. 594; *Allen v. Carter, supra;* *Tesson v. Ins. Co.*, 40 Mo. 33.

Applying these rules, it seems to us that the evidence in the case falls far short of the requirements of the law. The appellants, in order to satisfy the law, were compelled to introduce some proof that the officers of the grand lodge knew that Dr. Sater had two sets of

children, and that he *intended* to make one set the beneficiaries to the exclusion of the other. In the absence of such proof how can it be said that the mistake was mutual. The certificate, as issued, expresses the understanding of the officers of the order of the direction given by Dr. Sater in respect to the beneficiaries to be designated. But, if this proposition be too technical, it may, for the purposes of the case, be conceded that there was a mutual mistake. With the fact admitted that the policy did not correctly represent the wishes and intention of the parties, before a decree of reformation could properly be entered, it was necessary for the appellants to show that Dr. Sater did not fully understand the language of the policy or its meaning as applicable to the beneficiaries (2 Wood, Insurance, sec. 507; *Monitor Ins. Co. v. Buffum*, 115 Mass. 343; *Thomas v. Leake*, 67 Tex. 469), and that his failure to comprehend it was not due to his own carelessness or inattention. *Gwin v. Waggoner*, 98 Mo. 315. Parol evidence was admissible to show these facts. Now the appellants not only failed to make such a case, but on the other side the respondents read the deposition of Mr. Curtice, who testified that Sater fully understood that his older children were included in the beneficiaries named in the certificate, and that he absolutely refused to have the certificate changed, although advised that the change could be accomplished without difficulty and at a trifling expense. The idea to be drawn from this testimony is, that Sater recognized the moral obligation to make all of his children the recipients of his bounty, but, at the same time, he expressed the hope that the older children, who were otherwise better provided for, would waive their rights in favor of their less fortunate brothers and sisters. This is a complete refutation of the argument, that Dr. Sater did not properly interpret his contract with the plaintiff.

We conclude that the judgment of the circuit court was right, and it must be affirmed. All the judges concur.