THE SUPREME LODGE KNIGHTS OF PYTHIAS

*v.*

MATILDA TREBBE.

*Opinion filed April 17, 1899.*

BENEFIT SOCIETIES—*when by-law is enacted by supreme lodge.* Adoption by the supreme lodge, by a *viva voce* vote, of a committee report approving a suicide by-law passed by a subordinate board of control without authority, is an enactment of such law by the supreme lodge, although its constitution provides another method for enacting by-laws, and binds members whose contracts require compliance with all laws "now in force" or "hereafter enacted by the supreme lodge." (See head-note 4, *ante*, p. 341.)

*Supreme Lodge K. of P. v. Trebbe,* 74 Ill. App. 545, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. A. S. WILDERMAN, Judge, presiding.

WARWICK M. HOUGH, for appellant.

M. MILLARD, and F. C. SMITH, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The appellee recovered a judgment for $3000 against the appellant in the city court of East St. Louis, which, on appeal to the Appellate Court for the Fourth District, was affirmed, and an appeal is prosecuted to this court.

The order of Knights of Pythias was incorporated in 1870 under the laws of the District of Columbia, as "The Supreme Lodge of the Knights of Pythias of the World." By an amendment to its certificate of incorporation in October, 1875, it was provided the supreme lodge should be and remain a body corporate for the term of twenty years. A further amendment, dated in March, 1882, authorized the establishment of the endowment rank, to be governed by such laws as to the said supreme lodge may seem proper. Subsequently, in June, 1894, by a special

act of Congress the Supreme Lodge Knights of Pythias was incorporated as a fraternal and benevolent association. The endowment rank was the insurance branch of the order, and it was provided that it should be governed by such laws as the supreme lodge may enact or authorize. The supreme lodge created the board of control, which was given entire charge of the endowment rank, and that board was authorized to establish a table of rates for insurance of its members, to make special assessments when necessary, and to make, alter and amend all laws pertaining to the endowment rank and to issue certificates therein.

At the eighteenth convention of the Supreme Lodge Knights of Pythias, held at Washington, D. C., August 28 to September 8, 1894, the board of control made a report of having adopted for the government of the endowment rank a law with reference to the suicide of one holding a certificate of insurance in the order. The law passed by the board was substantially as follows: "If the death of any member of the endowment rank heretofore admitted into the first, second, third or fourth classes, or hereafter admitted, shall result from self-destruction, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be superinduced by the use of intoxicating liquors, narcotics or opiates, or in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law; then, in such case, the certificate issued to such member, and all claims against said endowment rank on account of such membership, shall be forfeited." The report was referred to a committee of the endowment rank, who reported they had "given the same careful consideration in every respect, and fully concur and approve of the legislation, in all details, enacted by said board for the government of the endowment rank." That report was subsequently adopted by the supreme lodge on a *viva voce* vote.

The board of control was in existence prior to the first day of January, 1889. On the 19th day of August, 1889, G. H. Trebbe filed an application to become a member of the endowment rank, and his application contained the following provision.

"I hereby agree that I will punctually pay all dues and assessments for which I may become liable, and that I will be governed and this contract shall be controlled by all the laws, rules and regulations for the order governing this rank now in force or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World, or submit to the penalties therein contained. To all of which I willingly and freely subscribe.

"Dated at East St. Louis this the 19th day of August, 1889.
G. H. TREBBE."

The president of the board of control, on that application, issued a certificate, which contained the following provisions:

"This certifies that brother G. H. Trebbe received the obligation of the endowment rank of the Order of Knights of Pythias in section No. 324 on September 6, 1889, and is a member in good standing in said rank, and in consideration of the representations and declarations made in his application, bearing date of August 19, 1889, (which application is made a part of this contract,) and the payment of the prescribed admission fee, and in consideration of the payment hereafter to said endowment rank of all assessments as required, and the full compliance with all laws governing this rank now in force or that may hereafter be enacted, and shall be in good standing under said laws, the sum of $3000 will be paid by the Supreme Lodge of Knights of Pythias of the World to Matilda Trebbe, his wife, as directed by said brother in his application, or to such other person or persons as he may subsequently direct by change of beneficiary entered upon the records of the supreme secretary of the endowment rank, upon due notice of proof of death and good standing in the rank at the time of death and surrender of this certificate: *Provided, however,* that the interest of any beneficiary, as designated by said brother, or the interest of his or her heirs, shall cease and determine in case of the death of said beneficiary during the lifetime of such member, and in that case the benefit accruing under this certificate shall be paid as provided for in article 12, section 1, of the endowment

rank constitution: *Provided further,* that if, at the time of the death of said brother, the proceeds of one assessment on all members of the endowment rank shall not be sufficient to pay in full the maximum amount of endowment held under this certificate, then there shall be paid an amount, less ten per cent for expenses, equal to the proceeds of one full assessment on all remaining members of the endowment rank, and the payment of such sum to the beneficiary or beneficiaries mentioned herein shall be in full of all claims and demands under and by virtue of this · certificate. And it is understood and agreed that any violation of the within mentioned conditions, or the requirements of the laws in force governing this rank, shall render this certificate and all claims null and void, and that the said supreme lodge shall not be liable for the above sum or any part thereof.

"In witness whereof we have hereunto subscribed our names and affixed the seal of the Supreme Lodge Knights of Pythias of the World. Issued this 17th day of September, 1889, pp. xxvi, at Chicago, Illinois, and registered in book 2, folio 168.

[Seal.]                    J. A. Hinsey, *Pres. Board of Control.*
Attest: W. B. Kennedy, *Supreme Sec. Endowment Rank."*

And the certificate was accepted by the applicant, as follows:

"I hereby accept this certificate of membership subject to all the conditions therein contained.        G. H. Trebbe.
Attest: Frank Martin, *Sec. Section No...,   E. R."*

The endowment rank was the insurance branch of the order, and the board of control was created by the supreme lodge and given entire charge of the endowment rank. It was authorized to make rates for insurance, make special assessments, and make, alter and amend all laws pertaining to the endowment rank and to issue certificates therein. G. H. Trebbe had knowledge of that board and its powers when he applied for insurance and took a certificate from its president. The application by him contained this provision: "This contract shall be controlled by all the laws, rules and regulations for the order governing this rank now in force or that may hereafter be enacted by the Supreme Lodge Knights of

Pythias of the World," etc. By the terms of the certificate of insurance it was provided that if compliance should be had with all laws "governing this rank now in force or that may hereafter be enacted," etc., payment was to be made, etc. Under the by-laws the board of control had the right to make, alter and amend the law governing the endowment rank, and it being necessarily assumed that Trebbe had knowledge of the powers of that board, he took his certificate with notice of its powers.

Long after the issue of this certificate, and whilst the enactment of the board of control was in force, G. H. Trebbe did, on the 7th day of September, 1896, commit suicide. The beneficiary in the policy brought suit on the certificate, and on trial before a jury the court refused instructions asked by the defendant, that if they believed, from the evidence, that the death of G. H. Trebbe resulted from self-destruction, whether sane or insane at the time, they must find for the defendant, and gave an instruction for the plaintiff that the jury must find the issue for the plaintiff and assess her damage at $3000. To the refusal to instruct as asked by the defendant and giving the instruction asked by the plaintiff the defendant excepted.

It is apparent that in the organization of this association a provision was made for the organization of a constitution regulating and governing the order itself. By the organization of the endowment rank it embodied and embraced the insurance part of this order. The board of control was given control of the endowment rank with reference to insurance and with reference to rates of insurance, and had the right to amend, change or make additional laws for the government of the same. When the board of control enacted a statute under the terms and provisions of the powers conferred upon it by the supreme lodge, and the supreme lodge at a meeting had presented to it a report of the committee of the endowment rank, stating that it, the board of control, had

enacted a statute for the government of the endowment rank, and the supreme lodge adopted and approved, by a *viva voce* vote, the report of the committee of the endowment rank which showed the adoption of the report of that committee, it was the enactment by the supreme lodge of a statute for the government of that body.

In *Dornes* v. *Supreme Lodge Knights of Pythias*, 75 Miss. 466, it was held: "The valid passage of a law by the supreme lodge in any mode not prohibited by its charter or the general law of the land is necessarily a repeal of any other mode previously prescribed by the same supreme lodge,—the same source of power. The authorities make this perfectly clear. In *Supreme Lodge* v. *Knight*, 117 Ind. at page 495, (20 N. E. 483,) it is said: 'Charters are not created by the act of the corporation or association, but are granted by the sovereign power of the State. A constitution of a voluntary association or a corporation is nothing more than a by-law under an inappropriate name. The power that can enact a by-law, whether called a constitution or not, can alter or abrogate it, unless some higher rule restrains or prohibits a change or repeal. When the authorities speak of a charter they mean an essentially different thing from a law or constitution of the association's own creation. What counsel call a charter is nothing more than a code of laws established, not by the sovereign power of the government, but by the creature of that power,—the corporation or association. The most that can be justly said is, that the later by-laws are in conflict with the earlier. There is therefore no clashing between corporate utterances and charter provisions.' And this was said by Elliot, C. J., speaking of provisions of the supreme constitution of the order itself. In *Richardson* v. *Society*, 58 N. H. at page 188, the court say: 'Complaint is made that the amendment of by-law 13, requiring a two-thirds vote for the admission of new members, was not properly and legally enacted because its passage was not obtained by a vote of two-thirds of those present,

according to by-law 12, requiring a vote of two-thirds of the members present to alter or amend the by-laws of the society.   *   *   * . By-law 12 was not part of the charter or constitution of the society and not a law for the guidance of its officers and agents.   It was an enactment made by one meeting of the society to govern the proceedings of future meetings, and was inoperative beyond the pleasure of the society acting by a majority vote at any regular meeting.   The power of the society, derived from its charter and the laws under which it was organized, to enact by-laws is continuous, residing in all regular meetings of the society so long as it exists.   Any meeting could, by a majority vote, modify or repeal the law of a previous meeting, and no meeting could bind a subsequent one by irrepealable acts or rules of procedure. The power to enact is a power to repeal, and a by-law requiring a two-thirds vote of members present to alter or amend the laws of the society may itself be altered, amended or repealed by the same power which enacted it. (Angell & Ames on Corp. 450; *Commonwealth* v. *Mayor, etc.* 5 Watts, 152, 155; *Christ Church* v. *Pope,* 8 Gray, 140, 142.)   The society, by a majority vote, might amend or repeal by-law 12.   By a like vote they might adopt any mode for the admission of members.'   This is directly in point.   Mr. Thompson in Commentaries on the Law of Corporations, (vol. 1, sec. 943,) lays down the same rule, saying: 'If the charter is silent as to the formalities to be observed, a by-law may be adopted by acts as well as by words.'"

It was held in *State of Missouri ex rel.* v. *Grand Lodge A. O. U. W.* 70 Mo. Ct. of App. 456: "The ruling in the *Davenport case,* and its approval and adoption by the grand lodge and the subsequent recognition of the rule by the grand lodge, can be taken in no other light or be reconciled upon any other hypothesis than the adoption of the ruling as a rule of the order. This conduct and these acts of the grand lodge are irrefragable proof of the adoption

of the law, which it might do as well by acts and conduct as by a formal and express adoption of the by-law. (Angell & Ames on Corp. sec. 328; *Lockwood* v. *Mechanics' Bank,* 9 R. I. 836.)  This law having been adopted, the second question is, was the defendant, he having become a member of the order and received his beneficiary certificate prior to its adoption, amenable to it.  The right to amend its by-laws is necessarily inherent in a corporation of this kind, and its members might reasonably expect that they would be amended.—*Ellerbe* v. *Faust,* 119 Mo. 653; *Schrick* v. *St. Louis Mutual House Building Co.* 34 id. 423; *Allen* v. *Life Association of America,* 8 Mo. App. 52."

In *Supreme Lodge Knights of Pythias* v. *McLennan,* 171 Ill. 417, the question was presented on demurrer to a plea, and it was held that the provisions of the application for certificate by which it was provided that the applicant would be bound by all laws then in force or which might be thereafter enacted by the supreme lodge would be binding, could not be pleaded, as the agreement averred that the "board of control of the endowment rank of the supreme lodge adopted the by-law so relied upon."

The board of control having enacted a law for the government of the endowment rank, which was reported to the supreme lodge by a committee of the endowment rank, and the supreme lodge having adopted the report and approved the law, it must be held that the statute thus reported by the board of control was enacted by the supreme lodge.  To hold otherwise would be to hold that one legislative body might limit the power of another legislative body with equal powers, and prevent the enactment of laws by a body of equal authority.

We hold that the exercise of the power conferred on the board of control for the government of the endowment rank, authorizing them to enact, amend and annul laws, when acted on by that board and reported to the supreme lodge and approved by it, was the enactment of the particular provision involved in this case with reference to

a bar of a right of action where death resulted from self-destruction, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be superinduced by the use of intoxicating liquors, narcotics or opiates, or at the hands of justice.

Under the replications to the pleas and under the evidence appearing in this record no question is presented for the consideration of this court as to whether the character of insanity was such that the deceased, at the time of committing suicide, was unconscious of the act, or whether the degree of insanity would in any manner cause this by-law to be of no effect in barring the right of recovery. As tried, the case presented to this court is simply the case of the certificate and the by-law and an act of self-destruction.

It was error in the trial court to refuse the instructions asked by the defendant, and it was also error to give the instruction asked by the plaintiff.

The Appellate Court erred in affirming the judgment of the city court of East St. Louis. The judgment of the city court of East St. Louis and the judgment of the Appellate Court for the Fourth District are each reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*