REUBEN LEWINE, and HEYMAN LEWINE, by WOLFORD, their Next Friend, Respondents, v. SUPREME LODGE, KNIGHTS OF PYTHIAS OF THE WORLD, Appellant.

St. Louis Court of Appeals, February 5, 1907.

1. MUTUAL BENEFIT SOCIETIES: Future By-Laws. A member of a fraternal benefit society is bound by such reasonable regulations and by-laws of the order adopted after he becomes a member as are clearly contemplated by his agreement.

2. ———: ———: Benefit Certificates. Benefit certificates issued to members of fraternal benefit associations are essentially contracts of insurance and are controlled by the law governing the construction and interpretation of contracts generally; such a contract can not be altered or modified by the association issuing it without the express assent of the member; a holder of such certificate may by an express contract bind himself by such future by-laws as may modify or change his contract of insurance.

3. ———: ———: ———. Where a member of a mutual benefit society in his application and certificate stated that he would be governed and his contract of insurance controlled by all laws in force and thereafter to be enacted, he thereby agreed, first, that he would conform to such by-laws as were provided for the regulation of his duties as a member, and second, that his contract of insurance should be controlled by such future laws as were enacted for the purpose of aiding and effectuating the insurance feature in furtherance of the benevolent purposes of the order; the phrase "this contract shall be controlled by subsequent by laws," did not empower the association to enact a by-law reducing the amount to be paid on the certificate in case the member committed suicide.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellants.

*Frederick H. Bacon* for respondents.

(1) The contract in question is one of life insurance. This is settled by an overwhelming array of authorities, from which we need only cite: Toomey v. Knights of Pythias, 147 Mo. 129; State v. Merchants' Exchange, 72 Mo. 146; National Union v. Marlow, 74 Fed. 775; Commonwealth v. Weatherby, 105 Mass. 148; Kern v. Supreme Council, 167 Mo. 471, 67 S. W. 252. (2) Taken in connection with other parts of the contract, the words, "controlled by," in the application, mean no more than words, "compliance with," used in the certificate itself. The agreement of the member to comply with the laws, rules and regulations then in force or thereafter enacted, or even that the contract shall be "controlled" by after-enacted laws, does not enable the association to inject a new condition into the contract and thereby reduce the stipulated amount to be paid or destroy the right absolutely. Morton v. Royal Tribe of Joseph, 93 Mo. App. 78; Richmond v. Supreme Lodge, 100 Mo. App. 8; Hysinger v. Supreme Lodge, 42 Mo. App. 635; Morrison v. Wisconsin, etc. Co., 59 Wis. 162; Morton v. Supreme Council, etc., 100 Mo. App. 76-92; Campbell v. American Club, 100 Mo. App. 249-255; Pearson v. Knights Templar, 114 Mo. App. 288; Smith v. Supreme Lodge, 83 Mo. App. 512-526; Indemnity Co. v. Jarman, 44 C. C. A. 93, 104 Fed. 638; Sautter v. Supreme Conclave, 62 Atl. 529; Hobbs v. Iowa Benefit Association, 82 Iowa, 107, 47 N. W. 983; Pokrefky v. Detroit Assn., 121 Mich. 456, 80 N. W. 240.

STATEMENT.—The petition and answer are extended and although the appeal is from and seeks a review of the action of the circuit court in sustaining a motion for judgment on the pleadings, we will refrain from incorporating them in the opinion. To copy these documents in full would tend more to obscure the material matter in controversy beneath an abundance of averment than to enlighten the reader. We are persuaded that the facts material to an intelligent disposition of this controversy may be recited with a greater degree of brevity and precision than can be had by adopting another course. In substance the facts are: the plaintiffs sue the defendant, an incorporated beneficial association, on its certificate of life insurance issued to and accepted by their father, Charles Lewine, December 22, 1890, in which certificate these plaintiffs, children of the said Lewine, are the designated beneficiaries of the fund therein mentioned. The petition sets out the certificate *in haec verba,* and by proper allegation, avers that the said parent, having duly complied with all the terms and conditions of the contract therein mentioned, departed this life June 13, 1905, while said certificate was in full force and effect; that in due time they furnished defendant with proper proofs of the death of said Charles Lewine, etc., and otherwise duly performed all conditions on their part required by said contract, demanded payment thereon from the defendant, etc., which was refused.

To the cause of action stated, the defense is the suicide of the insured. The facts relevant to this defense appearing from the admission and allegations in the answer, are that there was no provision in the application of plaintiff nor in the certificate, constitution or by-laws of the defendant at the time plaintiff became a member and the certificate was issued to him, pertaining to suicide. Several years thereafter, a by-law on suicide was duly adopted by the association, however, and

this by-law underwent several revisions until finally it was amended by the grand lodge of the order duly assembled in August, 1896, and as amended, provides in substance that if the death of the member *"heretofore"* or *"hereafter"* admitted, "shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insané at the time . . . ." then "the amount paid upon such member's certificate shall be the sum only in proportion to the whole amount as a matured life expectancy is to the entire expectancy at the date of admittance to the endowment rank, the expectation of life based upon the American Experience Table of Mortality in force at the time of such death to govern." It is alleged that the insured, "Charles Lewine, on the 13th day of June, 1905, took his own life or committed suicide by cutting his throat with a knife, purposely intending to take his own life." It appears that in his application on which the certificate was issued, Charles Lewine subscribed and agreed as follows:

"I hereby agree that I will punctually pay all dues and assessments for which I may become liable, and that I will be governed, and this contract shall be controlled by all the laws, rules and regulations of the order governing this Rank now in force or that may hereafter be enacted by the supreme lodge, Knights of Pythias of the World, or submit to the penalties therein contained, to all of which I willingly and freely subscribe."

From the certificate as set out in the petition, it appears that it was issued, among other things "in consideration of the representations and declarations made in his application . . . which application is made a part of this contract . . . and in consideration of . . . and the full compliance with all laws governing this rank now in force or that may hereafter be enacted by the supreme lodge . . . the sum of two thousand dollars will be paid . . . to Reuben and Heyman Lewine, his sons, . . . provided, further, that at the

time of the death of the said brother, the proceeds of one assessment on all members of the endowment rank shall not be sufficient to pay in full the maximum amount of endowment held under this certificate, then there shall be paid an amount equal to the proceeds of one assessment on all regular members of the endowment rank, less ten per cent for expenses, and the payment of such sum to the beneficiaries, etc., shall be in full," etc. It is further provided therein: "And it is understood and agreed that any violation of the within mentioned conditions or the requirements of the laws in force governing this rank, shall render this certificate and all claims null and void."

The answer avers that inasmuch as the deceased agreed in his application to be "governed" and that his contract should be "controlled" by future enacted laws, and that the certificate shows on its face that it was issued in consideration of those agreements on his part, and that he was obligated therein to full compliance with all laws now in force or that may hereafter be enacted, that both deceased and his beneficiaries, these plaintiffs, are obligated by the subsequent by-laws dealing with suicide and therefore plaintiffs are entitled to recover such sum only in proportion to the whole amount as a matured life expectancy is to the whole expectancy at the date the member was admitted to the endowment rank, as mentioned, and to be determined as in such subsequent by-law indicated.

The plaintiffs filed no replication denying the allegations of the answer, but on the contrary, filed a motion for judgment on the pleadings in the nature of a demurrer to the answer, which operated, of course, to admit the material facts well pleaded therein to be true. This motion the court sustained and entered judgment for the plaintiffs against the defendant for $2,079 and costs. After unsuccessful motions for a review in the trial court, the case comes here by appeal.

NORTONI, J., (after stating the facts).—There being no allegation in the answer that one assessment on the membership was insufficient to render the maximum amount of $2,000 mentioned in the certificate, this feature of the contract is eliminated from consideration, and it therefore follows that Charles Lewine, the insured member, having committed suicide, these plaintiffs, beneficiaries, are entitled to receive either the maximum amount of $2,000 mentioned in the certificate, or the lesser amount provided for in the subsequent by-law on the subject of suicide. This lesser amount is averred to be $853.15. The record therefore presents but one question calling for the opinion of the court, and that is, can the original contract of insurance and the indemnity therein provided be thus modified by the adoption and retrospective operation of a subsequent by-law on suicide, without the express assent of the insured member, or did he consent to such modification by the language employed in his contract of membership and insurance? The learned counsel for appellant point us to the language of his application wherein he agreed that he would "be governed" and his contract should "be controlled" by all laws, etc., then in force or which might thereafter be enacted or submit to the penalties therein contained, and argue that this agreement on his part is parcel of the consideration upon which the certificate was issued to him, wherein, by his acceptance, he agreed to "a full compliance with all the laws governing the rank then in force or that might thereafter be enacted," and it is insisted that from this it is manifest Charles Lewine agreed in advance that his contract might be thus modified and altered. Our attention in this connection is especially invited to numerous decisions of the Supreme and Appellate Courts of Illinois where, in suits against this identical defendant, on the identical language here involved, the member was held to have agreed in advance to the future material modification of his insur-

ance contract by such subsequent enactments. These cases are Sup. Lodge K. of P. v. Trebbe, 179 Ill. 348; Sup. Lodge K. of P. v. Kutscher, 179 Ill. 340; Sup. Lodge K. of P. v. Clarke, 88 Ill. App. 600, and we are cited as well to the case of Morton v. Royal Tribe of Joseph, 93 Mo. App. 68, wherein it seems that this court so held. Whatever the state of the adjudicated law on this subject may be elsewhere, the matter must be determined here by the proper application of sound principle and a firm adherence to the doctrine of this court. Now, if there be any proposition settled in the law with respect to benefit societies, it is that they, and the respective rights of the parties constituting the same and dealing therewith, arise entirely out of contract, and are to be ascertained and measured by the principles of contract law. In the first instance, the entire scheme and scope of their organization, as well as the contemplated future conduct and operation of the society, is conceived in and brought forth from contractual relations imposing certain valid obligations and reciprocal duties upon the association on the one part and the several members thereof on the other. The charter of such associations, or its equivalent, the statute under which they are organized, being the fountain head and source of their authority, is, as a matter of course, always considered parcel of the arrangement between the parties, and in those cases where the certificate and application refer to each other in some apt and appropriate manner, as in this case, refer to the constitution and by-laws, the reasonable provisions of such constitution and by-laws in force at the time, and such reasonable regulations subsequently provided in lawful maner, as are clearly contemplated by the parties, as manifested by express agreement, or by proper words employed evidencing such an intention, are adjudged to be the contract between the parties. Generally speaking, the cases with unanimity, either so decide or proceed in affirmance of

this fundamental proposition.    [Laker v. Fraternal
Assn., 95 Mo. App. 553, 75 S. W. 705; Richmond v. Sup.
Lodge, 100 Mo. App. 8-19, 71 S. W. 736; Grand Lodge
v. Sater, 44 Mo. App. 445; Supreme Council v. Curd, 111
Ill. 284; State ex rel. v. Temperance Ben. Assn., 42 Mo.
App. 455; Union Ben. Society v. Martin, 23 Ky. L. R.
2296; Bacon on Benefit Societies (3 Ed.), secs. 184-161-
181; 3 Am. and Eng. Ency. Law (2 Ed.), 1081.]    And
while this is true, certificates issued by such fraternal
associations providing for indemnity upon the death of
the member, are essentially contracts for insurance, and
as such, are subject to the same rules of law which gov-
ern and control the construction and interpretation of
contracts generally.    Such contracts create and estab-
lish obligations as others do, and are immune from fu-
ture impairment, modification or change identically as
other contracts are, without the assent of the parties in
interest.    [State v. Ben. Ass'n, 72 Mo. 146; Common-
wealth v. Weatherby, 105 Mass. 149; Morton v. Sup.
Council, 100 Mo. App. 76, 73 S. W. 259.]    Now, it is
abundantly settled, both upon principle and authority,
and in truth all the authorities agree to the proposition,
that inasmuch as the beneficiary is not a party to the
contract and is therefore always subject to the power
of the insured during his life to change or re-designate
the object of his bounty, that such beneficiary therefore
has no vested right in the fund prior to the happening
of the contingency upon which the benefit is to accrue;
or in other words, that the beneficiary has but an expec-
tancy,    subject to the right of the member    insured to
terminate it if he sees fit so to do.    [Benefit Society v.
Bunch, 109 Mo. 560; Sup. Council v. Kacer, 96 Mo. App.
93, 69 S. W. 671; 1 Bacon on Benefit Societies (3 Ed.),
sec. 237; Niblack on Benefit Societies (2 Ed.), 212-202.]
This proposition is not true, however, with respect to
the insured.    Indeed, while the insured member has no
vested right in the fund, such as would become assets of

his estate after his decease (Bacon on Benefit Societies [3 Ed.], 237), he has clearly a vested right in the contract with the association whereby he is given the power to designate who shall receive, and the amount that shall be received by those whom he designates as the recipients of his bounty, and this is considered as in the nature of a property right. [Hysinger v. Sup. Lodge, 42 Mo. App. 627-635; Froelich v. Mut. Ben. Assn., 93 Mo. App. 383; Lysaght v. Stonemasons, etc., Assn., 55 Mo. App. 531; Wist v. Grand Lodge, 22 Or. 271; Hogan v. Pacific Endowment League, 99 Calif. 348; Morrison v. Wis. Odd Fellows, 59 Wis. 102; Niblack on Benefit Societies (2 Ed.), 213.] On this subject, Mr. Bacon, in his valuable work, says as follows:

"All of the authorities agree that the rights of the members of benefit societies in the sums agreed to be paid at death is simply the power to appoint the beneficiary and that the constitution, or charter, and the by-laws are the foundation and source of such power. The cases must not, however, be understood to hold that the member of a benefit society has not a property right in the contract of membership, under which he has power to designate a recipient of the benefit to be paid, because of such membership and under the contract. The right of the member in this contract is a valuable one, which the courts will at all times recognize and protect, although strictly speaking, such member has no property interest in the benefit paid, or subject of the power. The membership, which includes the right to pay the agreed consideration and to appoint a person to take the benefit, must be regarded as a species of property and is to be distinguished from the benefit, or sum to be paid, itself in which the member has no property. This principle has been clearly recognized in later cases."

Having thus ascertained that the contract involved is one for insurance in which the member has vested rights, it then becomes important to ascertain whether

or not this contract could be substantially altered or its obligation abridged by the future law on suicide. Now, it is well settled and it is the doctrine of this court that such contracts, in so far as the insurance feature is concerned, cannot be altered or modified in substance without the express assent of the member. This has been repeatedly held in express terms and other cases have proceeded in affirmance of the proposition. [Hysinger v. Sup. Lodge, 42 Mo. App. 627; Grand Lodge v. Sater, 44 Mo. App. 445; Sackberger v. Grand Lodge, 73 Mo. App. 38-42; Smith v. Sup. Lodge, 83 Mo. App. 512; Morton v. Sup. Council, 100 Mo. App. 76, 73 S. W. 259; Campbell v. Amer. Ben. Club, 100 Mo. App. 249, 73 S. W. 342; Sisson v. Sup. Court of Honor, 104 Mo. App. 54, 78 S. W. 297; Pearson v. Indemnity Co., 114 Mo. App. 283, 89 S. W. 588.] It must be conceded, however, that this was a matter within the power of the parties to determine by contract, and no one would question for a moment the right of the parties when entering into the contract here involved, to have stipulated in plain and express terms to the effect that the association reserved to itself power to provide by subsequent laws, a reduction of the insurance in event of suicide, and had such express stipulation been inserted in the contract at the time, it would operate to have substantially modified the contract with the express assent of the member, and would therefore stand and be enforced as a valid provision of the contract of insurance. But no such express stipulation was incorporated. The argument advanced is that even though such was not provided in express words, the language employed on that question was of such a character as to signify that the member contracted in advance to abide by the result of such subsequent law. It is true Lewine agreed that, first, "I will be governed" and second, "this contract shall be controlled by all laws" in force or hereafter enacted. There is no doubt that a fair interpretaton of this agree-

ment reveals that it was two-fold. That the agreement should be two-fold is natural indeed, for the members of these societies stand in a dual relation to the society; one relation is that of a member, the same as any other member, whether insured or not, regard being had to the social features of the organizations; and the second is that of an insured person having a valuable contract therewith whereby an indemnity is guaranteed to his designated beneficiaries. This then being the situation of the parties, it is clear that the agreement, "I will be governed," bore reference to such laws as were then in force, or future laws as might be provided tending to regulate his conduct as a member, and the internal affairs of its lodge system, all of which were essentially within the contemplation of the parties; while the second agreement to the effect that "this contract shall be controlled" by present and future laws, bore reference only to such present and future laws as were in aid and in furtherance of the essential elements of indemnity vouchsafed in his contract for insurance, for it is reaonable indeed that both the member and the society should contemplate and intend, when looking into the future, that the society should reserve some rights with respect to bringing about such reasonable changes in aid of the provisions of the contract as experience might dictate were necessary, and it does not seem reasonable that the agreement bore reference, to such subsequent laws which instead of aiding the beneficial purposes of the organization, would modify or entirely abrogate such purpose by destroying the insurance for which the member had contracted and paid. As said before, the matter being one within the power of the parties to fix by contract, the case then, as presented, must be determined by a fair and reasonable construction or interpretation of the language employed, influenced by the principle so aptly expressed in the phrase that "forfeitures are not favored in the law." Now, it must be understood in all

of these cases, that the principal and moving inducement
for membership and payment of the dues in this and
other like societies, is the insurance vouchsafed in the
contract. Thus the contract in this respect, in its na-
ture being fraught with vested rights of the insured
member, this court has always treated it with a degree
of sanctity usually accorded the more sacred rights of
property. In affirmance of this principle, it has held
that the contract on the part of the member to "comply"
with future laws, did not authorize the subsequent mod-
ification of the contract by a suicide law, and Judge
GOODE pointed out therein that the true meaning of the
word "comply" in that respect was to require the mem-
ber to so regulate his conduct as to conform to such by-
laws, as were provided for the regulation of his duties as
a member. [Morton v. Supreme Lodge, 100 Mo. App.
76, 73 S. W. 176.] And so it has held that the contract
to conform to and abide by, or submit to the penalties,
of future by-laws, did not authorize the subsequent mod-
ification of the contract of insurance by an after-enacted
law reducing the amount to be paid in event of suicide;
that such was an unreasonable exercise of the power re-
served under the language quoted, and that to hold such
subsequent law valid would be an unreasonable interpre-
tation of the language employed in the contract. [Smith
v. Sup. Lodge, 83 Mo. App. 512; see, also, Brown v. Sup.
Lodge, 83 Mo. App. 633-641.] In truth, in every in-
stance where the matter has been squarely presented to
this court, this doctrine has been affirmed, and it has
been adjudicated that the agreement of the member to
"comply with," "abide by," "conform to," etc., and
words of like import, signify only a willingness on the
part of the member to comply with, abide by, etc., such
future laws of the order as are provided for the regula-
tion of the internal government of the society and the
conduct of the members generally, and that from the
employment of such language, there is no implication

that the member contemplated or intended to authorize the association to reduce or abridge the insurance vouchsafed in the contract. [See, also, on this question, Campbell v. Amer. Ben. Club, 100 Mo. App. 249, 73 S. W. 342; Sisson v. Sup. Court of Honor, 104 Mo. App. 54, 78 S. W. 297; Pearson v. Indemnity Co., 114 Mo. App. 283, 89 S. W. 588; Hysinger v. Sup. Lodge, 42 Mo. App. 629; Grand Lodge v. Sater, 44 Mo. App. 445; Sackberger v. Grand Lodge, 73 Mo. App. 38.] The fundamental notion pervading the cases supra is that, in view of the important subject-matter involved, the insurance provided for in the contract, it is both an unreasonable exercise of the power reserved and an unreasonable interpretation of the contract, to place on the language therein employed a construction holding that the member had in contemplation and intended thereby to authorize the association to strike down and abrogate the substantial provisions of indemnity therein contained by subsequent law of the character mentioned. Besides Smith v. Sup. Lodge, 83 Mo. App. 512, and other cases of this court above cited, see also the following authorities from other jurisdictions, all of which assert and sustain the same doctrine with convincing logic: Knights Templar, etc., Life Indemnity Co. v. Jarman, 104 Fed. 638; Newhall v. Sup. Council (Mass.), 63 N. E. 1; Wist v. Grand Lodge, 22 Ore. 271; Gaut v. Sup. Council (Tenn.), 64 S. W. 1070; Sup. Council v. Getz, 112 Fed. 119; Hale v. Eq. Aid Union, 168 Pa. St. 377; Parish v. N. Y. Produce Exchange, 169 N. Y. 34; Pokrefky v. Assn., 121 Mich. 456; Langan v. Amer. Legion, 70 N. Y. Supp. 663; Weiler v. Eq. Aid Union, 36 N. Y. Supp. 734; Bornstein v. Dist. Grand Lodge, 84 Pac. (Cal. App.) 271; Starling v. Sup. Council, 66 N. W. 340; Evans v. Southern Tier, 182 N. Y. 453; Beach v. Sup. Tent, 177 N. Y. 100; O'Neill v. Legion of Honor, 70 N. J. L. 410; Wuerfler v. Trustees, etc., 116 Wis. 19; Strauss v. Mut. Reserve Assn., 128 N. C. 465; s. c., 126 N. C. 977;

Bragaw v. Sup. Lodge, 38 S. E. 905; Ins. Co. v. Connor, 17 Pa. St. 137; Becker v. Farmers Mut. Assn., 48 Mich. 610; Taylor v. Modern Woodmen, 5 L. R. A. (n. s.) 283.

In support of this conclusion it is well to notice the question from principle, therefore let us examine the matter precisely as it is presented. In so doing, we first determine precisely what the society seeks in these cases, and that is, the society seeks a forfeiture of the member's rights and repudiation of part of all of the insurance contract on the ground that the member has failed to abide by or comply with or conform to a future law by which it maintains he has agreed in advance to be bound; or in other words, he has violated a subsequent law which it is alleged he has agreed in advance shall determine his rights, and the case viewed from this standpoint, renders it manifest that the judgment of the court must be influenced and controlled by that principle which governs and controls adjudications in common-law tribunals always when vested rights are sought to be forfeited. Now, there is a principle which is always pertinent where forfeitures are sought, and it is the rule that forfeitures are not favored in the law, and in order to work a forfeiture, it must clearly appear, first, that such was the result the party against whose rights the forfeiture is sought to be invoked, had in contemplation and intended when entering into the contract (3 Am. and Eng. Ency. Law [2 Ed.], 1086; Elliott v. Grand Lodge, 2 Kan. App. 430; Medical, etc., Soc. v. Weatherby, 75 Ala. 248; Schrick v. Gegenseitiger, etc., Fond, 44 Wis. 369; Ballou v. Gill, 50 Wis. 614; Miner v. Mich. Ben. Assn., 63 Mich. 338; Wiggin v. K. of P., 31 Fed. 122) ; and, second, when a forfeiture is sought on a doubtful provision, the language must be construed strictly against the insurer and in favor of the insured; or, in other words, in such doubtful cases, the doubt shall be resolved in aid of the contract and so as to avoid

a forfeiture (Renn v. Sup. Lodge, 83 Mo. App. 442; Northey v. Bankers Life Assn., 110 Cal. 547). Now, applying the familiar principles stated to the interpretation of the language employed in the contract before us, we must hold, first, that it is not clear and pointed to the effect that the insurance feature of the contract might be either abridged or annihilated by the subsequent law mentioned, and no one will, or could for a. moment dispute this proposition of fact. This being true, the language then is of that second class mentioned; that is, not clear to the effect that Lewine contemplated and intended such a result. Not being clear to the effect stated, it is doubtful, and as such, must receive a construction that will obviate the forfeiture, if such construction be reasonable and in accord with the benevolent features of the contract; or, in other words, the doubt should be resolved in aid and in support of the contract against the insurer and in favor of the insured. So interpreted, it is quite beyond peradventure the agreement that "this contract shall be controlled" by subsequent laws, can have no greater significance than that Lewine contemplated and intended his contract should be controlled by such future laws as were enacted for the purpose of aiding and effectuating the insurance feature which was in keeping with its benevolent purposes. Any other construction, in the light of the principle stated, would be indeed both unreasonable and unjust, and lead to absurd results, each and all of which interpretations are condemned by the cardinal canons of construction. There is a class of cases, however, quite contrary to the doctrine here asserted. They declare subsequent laws valid and binding if reasonable even though they alter, modify, and in some cases, totally destroy or abrogate the indemnity feature of the contract, notwithstanding such laws have been enacted under the most general agreements con-

122 App—36

tained in the application or certificate or a power reserved in the by-laws in force at the date the contract was entered into; for instance, contracts to comply with future laws, or to conform to future laws, or to abide by future laws, etc., are frequently adjudicated upon the broad proposition that the assured had agreed thereto in advance to authorize the material and substantial modification, and in some instances, the total abrogation of all rights of the insured by subsequent law on suicide, and in some other instances. Among this class of cases, are two at least we have in mind (Stohr v. San. F. Musical Fund Soc., 82 Cal. 557, and Pain v. Society of St. Jean [Mass.], 52 N. E. 502), which have penetrated the wilderness and extended the doctrine to the unreasonable, if not the ridiculous extent, of holding that even after the member is stricken and had been actually drawing sick benefits for weeks, his right to such benefits could be modified and materially reduced under the most general agreement in his contract of membership to be governed by future laws. In the class of cases under consideration, the only limitation noticed by the courts is that the subsequent law itself shall be reasonable. The following cases announce the doctrine thus referred to: Gilmore v. K. of C., 58 Atl. (Conn.), 223; State ex rel., etc., v. Camden Lodge A. O. U. W. (N. Y.), 64 Atl. 93; Hughes v. Wis. Odd Fellows (Wis.), 73 N. W. 1015; Eversberg v. Maccabees (Tex. Civ. App.), 77 S. W. 246; Chambers v. Sup. Lodge K. of M., 200 Pa. St. 244; Sup. Tent v. Hammers, 81 Ill. 560; Sup. Tent K. of P. v. La-Malta, 95 Tenn. 157; Dornes v. Sup. Lodge, 75 Miss. 466; Daughtry v. K. of P., 48 La. 1203; Sup. Tent v. Stensland, 105 Ill. App. 267; Schmidt v. Sup. Tent, 97 Wis. 528; Doidge v. Dominion Council, 4 Ont. L. R. 423; Hall v. Western Travelers Assn., 96 N. W. (Neb.) 170; Miller v. Nat. Council, 76 Pac. (Kan.) 830; Ross v. Modern Brotherhood, 120 Iowa 692; Pain v. Society of St. Jean (Mass.), 52 N. E. 502; Evans v. Southern

Tier, 76 App. Div. N. Y. 151; Loefler v. Modern Wood-
men, 100 Wis. 79; Sup. Com. v. Ainsworth, 71 Ala. 436;
Fullenwider v. Royal League, 180 Ill. 621; Lange v.
Royal Highlanders, 106 N. W. (Neb.) 224; Sup. Lodge
v. Trebbe, 179 Ill. 348; Sup. Lodge v. Kutscher, 179 Ill.
340; Sup. Lodge v. Clark, 88 Ill. App. 600; Sheppard
v. Bankers Union (Neb.), 108 N. W. 188; Union Ben.
Society v. Martin, 23 Ky. L. R. 2276; Messer v. Grand
Lodge, 180 Mass. 321; Stohr v. San. F., etc., Soc., 82
Cal. 557. Learned counsel for defendant have cited us
to those cases and argue for their doctrine in a manner
to invite the assent of this court thereto. We have given
each and all of them careful and attentive consideration
with a resulting positive conviction to the effect that
they are unsound in principle, and we are inclined rather
to dispute than follow their authority. While we favor
freedom of contract in the very largest measure, and ad-
here with firmness to the rule that the parties may, upon
entering into contracts of insurance, provide by com-
petent and pointed stipulation, for the partial or even
total destruction of the insurance provided, on a named
contingency to be the subject of subsequent laws, we
decline to subscribe to the doctrine that a mere general
agreement, which is susceptible to divers constructions,
is sufficient to signify that the member contemplated
and intended thereby to agree in advance that either
a portion or the entire beneficial interest in the fund
sought to be provided for loved ones, should be stricken
down and annihilated by subsequently enacted law.
Now, in our opinion, the manifest unsoundness of the
doctrine announced by the cases last cited, consists in
the total failure to observe and apply the important
and controlling principle which should always guide
and direct a court when dealing with forfeitures, and
in proceeding to forfeit the right of the insured by en-
forcing the subsequent by-laws enacted under the most
general provisions to that effect contained in the appli-

cation or certificate. Certainly when interpreting doubtful language in those cases where a forfeiture is invoked, the courts should adhere with firmness to that principle of adjudication, the purpose of which is to contribute to the security of vested rights, and construe doubtful words in aid of the insurance contract and thus aid and effectuate the purposes of benevolence declared in the charter, rather than in aid of the overthrow and total annihilation of both the fundamental conception of the fraternity and the indemnity features sought and paid for.

The subsequent law in this case, by its provisions, applies to members heretofore or hereafter admitted to the order. This retrospective language cannot aid the case for the defendant, for to give the law such retrospective operation in this case and thus modify the essential indemnity feature of the contract, under the language of the agreement found in the application and certificate, would be unreasonable indeed. What has been said applies of course only to the retrospective operation of such laws, for we know of no good reason why such a law should not have a valid and binding prospective operation on such contracts as are made after its enactment of which it, of course, becomes parcel.

In conclusion, we beg to suggest, does it appear reasonable that Charles Lewine, when agreeing that his contract should be controlled by subsequent laws, then had in mind, contemplated and intended that the society might, under this agreement, exercise the right to repudiate either a part or all of the insurance contract in event he committed suicide, thus destroying what he and every other prudent man, exercising his ordinary senses would deem to be secure thereby? We think not. We feel doubly assured of the soundness of the doctrine of this court when we note the opinion of such learned and eminent jurists to the same effect as the lamented

Judge THAYER, in the Jarman case, 104 Fed. 638, and Judge, now Mr. Justice HOLMES of the Supreme Court of the United States in the Newhall case (Mass.), 63 N. E. 1, and Chief Justice PARKER in Parish v. N. Y. Produce Exchange, 169 N. Y. 34, and Webber v. Sup. Tent of Maccabees, 172 N. Y. 490.

Now it seems that in the case of Morton v. Royal Tribe of Joseph, 93 Mo. App. 78, the real matter pressed upon the court for decision was whether or not the order was a fraternal beneficial association and as such, exempt from the general insurance laws of the State. The validity of the suicide law involved seems not to have been brought forward with much vigor at the argument and was therefore not dwelt upon in the opinion. So much of that case as bears a construction contrary to the views herein expressed, should be disapproved.

Finding no reversible error in the judgment of the circuit court, it will be affirmed. It is so ordered. *Bland, P. J.*, and *Goode, J.*, concur.